(May 8, 1905.)

# CALIFORNIA CONSOLIDATED MINING COMPANY v. MANLEY.

### [81 Pac. 50.]

FRAUDULENT CONVEYANCE—WANT OF CONSIDERATION—INTENT TO HINDER, DELAY OR DEFRAUD CREDITORS—NOTICE TO CORPORATION—NECESSARY PARTIES DEFENDANT.

1. Where K. takes a deed from McA. to all his interest in a mining claim, which is all the property McA. has in this state, for a consideration of one dollar and "other good and valuable consideration," which latter consideration is not explained, and at the time of such transfer K. has notice that his grantor is heavily indebted in this state and has avoided personal service of process and has allowed a judgment *in rem* entered against him for over $50,000, and has been trying to buy up such claims at one-fifth their face value, and that he is not meeting his obligations in due course of business, and that he has no other property in the state out of which such indebtedness can be made, and during the meanwhile

K. had occupied a close confidential relation with McA.—under such circumstances, *held*, that K. cannot restrain an execution sale of such property to pay creditors on the theory that he is an innocent purchaser for a valuable consideration.

2. The intent with which a transfer in fraud of credtors is made is not established so much by attempting to ascertain the *actual* intent in the mind of the debtor, but rather by the facts and circumstances under which the transfer was made and from which the law imputes a fraudulent motive.

3. A conveyance made for a mere nominal consideration when attacked as fraudulent will be subjected to the same rules applicable to voluntary transfers.

4. Notice to a person who was the promotor in the organization of a corporation, a principal incorporator and who is manager and resident director is such notice to the corporation that it cannot avail itself of the protection of law to which an innocent purchaser is entitled.

5. Where C. Co. seeks to restrain an execution sale on the grounds that it is an innocent purchaser for a valuable consideration, and K. is brought in as a defendant and files a cross-complaint to set aside the sale to C. Co. as fraudulent, the fraudulent grantors are not necessary parties.

(Syllabus by the court.)

APPEAL from District Court in and for Shoshone County. Honorable Ralph T. Morgan, Judge.

Plaintiff commenced an action against Charles Manley as sheriff of Shoshone county, to restrain him from making a sale of the California Lode Mining Claim on execution. A. G. Kerns, receiver of the property of the Coeur d'Alene Bank, an insolvent corporation, was brought in by an order of court and answered and filed a cross-complaint, alleging that the transfer to plaintiff was fraudulent and void, and made to hinder, delay and defraud creditors. The court found for the plaintiff and entered his decree perpetually enjoining the sale. Defendants appealed. Reversed.

W. W. Woods and H. S. Gregory, for Appellants. John P. Gray and J. H. Forney, of Counsel.

The contention of the appellants in this case is, that at the time McAulay conveyed the thirteen-sixteenths of the California

lode to Keane, he did so for nominal consideration, viz., the consideration of $1, and that the conveyance so made was with the intent to hinder, delay and defraud creditors of said McAulay. It is contended by respondent that it is an innocent purchaser and entitled to protection in equity. This proposition we controvert. To constitute one a *bona fide* purchaser, he must have actually paid the purchase price before he received notice of the facts. (*Wood v. Raburn,* 18 Or. 3, 22 Pac. 521.) Whenever the agent, acting in the scope of his duties, for his principal, receives notice in a matter in which he represents the principal, such notice is notice to the principal. The test is whether the information was of a character which it was the duty of the agent to communicate; if so, it binds the principal. (Wharton on Agency, sec. 178; *Whitney v. Burr,* 115 Ill. 289, 3 N. E. 434.) If the conveyance of the bulk of the personal property necessarily results in delaying creditors, the conveyance is a legal fraud, though no specific intent to defraud exists. (*Wells v. Schuster,* 23 Colo. 534, 48 Pac. 809.) It was urged by respondent in the court below, that Keane and McAulay were necessary parties to appellants' cross-complaint. We insist that neither of them were either necessary or proper parties thereto. (*Blanc v. Paymaster M. Co.,* 95 Cal. 524, 29 Am. St. Rep. 149, 30 Pac. 765.) The cross-complaint is proper in the action to quiet title when it seeks to enforce an equitable title against the plaintiff as the holder of the legal title. (*Winter v. McMillan,* 87 Cal. 256, 25 Pac. 407.) The debtor is not a necessary party where he has parted with the property. (*Samainego v. Stiles* (Ariz.), 20 Pac. 607; *Huneke v. Dold,* 7 N. Mex. 5, 32 Pac. 45.) In no event is McAulay or is Keane a necessary party to this suit. A voluntary conveyance is good as between the parties thereto. (*Bunn v. Winthrop,* 1 Johns. Ch. 329; *Jones v. Jones,* 6 Conn. 111, 16 Am. Dec. 35.) An absolute deed containing a warranty of title, and purporting to be made for valuable consideration, is valid as between the parties, though made for the purpose of defrauding creditors. (*Parrot v. Baker,* 82 Ga. 364, 9 S. E. 1068.) A conveyance made without consideration is void as to existing creditors, regardless of intent; as to subsequent creditors, it is void only when made to hinder, delay

or defraud them. (*Boatman Sav. Bank v. Overall,* 90 Mo. 410, 3 S. W. 64; *Lionberger v. Baker,* 88 Mo. 447; *Millington v. Hill,* 47 Ark. 301, 1 S. W. 547; *Eigenbrun v. Smith,* 89 N. C. 207; *Romands v. Maddux,* 77 Iowa, 203, 41 N. W. 763.) To avoid a sale for valuable consideration, actual notice to the purchaser of the fraudulent intent of the vendor is not necessary. No purchaser has a right to remain willfully ignorant of facts within his reach. (*Dyer v. Taylor,* 50 Ark. 314, 7 S. W. 258; *Gilliland v. Fenn,* 90 Ala. 230, 8 South. 15, 9 L. R. A. 413; *Tillman v. Heller,* 78 Tex. 597, 22 Am. St. Rep. 77, 14 S. W. 700, 11 L. R. A. 628; *Hawley v. Smeiding,* 3 Kan. App. 159, 42 Pac. 841; *Schnavely v. Bishop,* 8 Kan. App. 667, 55 Pac. 667; *Chapman v. Hughes,* 134 Cal. 641, 58 Pac. 298, confirmed on rehearing, 60 Pac. 974, 66 Pac. 982; *Richard v. Snyder,* 11 Or. 501, 6 Pac. 186; *Davis v. Ward,* 109 Cal. 186, 50 Am. St. Rep. 29, 41 Pac. 1010; *Jewett v. Palmer,* 7 Johns. Ch. 68, 11 Am. Dec. 401.) Lord Hardwick early announced the rule in our equity jurisprudence that even innocent purchasers could only invoke the protection of the court to the extent that they were "hurt," but Mr. Keane, in this case, strenuously refused to state, at any time, the amount to which he was "hurt" over and above $1, the consideration placed in the deed, and the only reasonable and intelligent inference to be drawn from all the facts and circumstances, as shown by the record in this case, is that, at all the times mentioned therein, the said Keane was not only the trustee, but the confidential agent of the said McAulay, and held this property as trustee for McAulay, burdened with the payment of the indebtedness of the Coeur d'Alene Bank as represented by the receiver herein. (*Rudy v. Austin,* 56 Ark. 76, 35 Am. St. Rep. 85, 19 S. W. 111; *Hagerman v. Buchanan,* 45 N. J. Eq. 292, 17 Atl. 946, 14 Am. St. Rep. 739, also extended note to the same; *Davis v. Ward,* 109 Cal. 186, 50 Am. St. Rep. 29, 41 Pac. 1010.) Warvelle lays down the following rule in determining the question of fraud: "It is further said that fraud should be so inferred when the facts and circumstances are such as to lead a reasonable man to the conclusion that an attempt has been made to withdraw the property of the debtor from the reach of his creditors with intent to prevent them

from recovering their just debts; and that, if *prima facie* such fraudulent attempt is thus established, it may be regarded as conclusive, unless it is rebutted by facts and circumstances which are proven." (Warvelle on Vendors, secs. 601, 619, 636; *Severs v. Dodson,* 53 N. J. Eq. 633, 51 Am. St. Rep. 641, 34 Atl. 7; *Kaine v. Weigley,* 22 Pa. St. 179; *Clements v. Nicholson,* 6 Wall. 299, 18 L. ed. 786; *Jewett v. Palmer,* 7 Johns. Ch. 68, 11 Am. Dec. 401; *Batavia v. Wallace,* 102 Fed. 243, 42 C. C. A. 310; *Zimmer v. Miller,* 64 Md. 296, 1 Atl. 858.) A conveyance by a debtor during the pendency of a suit against him is a badge of fraud. (*Venable v. United States,* 2 Pet. 112; *Callan v. Statham,* 23 How. 477, 16 L. ed. 532; Warvelle on Vendors, secs. 609, 611; *Lane v. Starkey,* 15 Neb. 285, 18 N. W. 47; *Bowyer v. Martin,* 27 W. Va. 442; *Clements v. Moore,* 6 Wall. 299, 18 L. ed. 786; *Thompson v. Baker,* 141 U. S. 648, 12 Sup. Ct. Rep. 89, 35 L. ed. 889; *Fuller Electrical Co. v. Lewis,* 101 N. Y. 675, 5 N. E. 437; *Mobile Sav. Bank v. McDonald,* 89 Ala. 434, 18 Am. St. Rep. 137, 8 South. 137, 9 L. R. A. 645; *Brady v. Linehan,* 5 Idaho, 732, 51 Pac. 761.) A court of equity will not interpose by injunction to prevent a sale of complainant's real estate under execution against another, since the question of title to real estate is ordinarily to be determined at law and a mere trespass will not be enjoined unless the legal remedy is inadequate; nor will the aid of an injunction be extended in behalf of one claiming under a fictitious or fraudulent sale from a judgment debtor made with the intent to prevent his creditors from reaching the property to restrain a sale of the property thus transferred under execution against the debtor. (1 High on Injunctions, 120; *Wilson v. Hyatt,* 4 S. C. 369; *Mora v. Avery,* 22 La. Ann. 417; *Lewis v. Drinkgrave,* 24 La. Ann. 489; 2 High on Injunctions, sec. 1550.)

A. H. Featherstone and Charles P. Lund, for Respondent.

This court has frequently decided that where findings of fact are made and judgment entered thereon, no exception being taken, the only question for consideration by the supreme court is whether the complaint states facts sufficient to warrant the judgment. (*Diehl v. Hull,* 1 Idaho, 352; *Goodman v. Minear,*

1 Idaho, 128; 8 Ency. of Pl. & Pr. 274.) An exception is an objection on a matter of law to a decision made either before or after judgment by a court, tribunal, judge, or other judicial officer in an action or proceeding. (Idaho Rev. Stats., sec. 4426.) The code requires findings of fact and conclusions of law, in an action tried before the court, to be separately stated and judgment rendered accordingly. (Rev. Stats., sec. 4407.) Even though it be claimed that the exception allowed by the court shows that objection was made, such exception is clearly insufficient. A general exception is not available if any one of the findings are unobjectionable. (*Allen v. Hutchinson*, 45 Wis. 259; *Neely v. Democratic Pub. Co.*, 12 Wash. 659, 41 Pac. 173; *Irwin v. Olympia Waterworks Co.*, 12 Wash. 112, 40 Pac. 637; *Washington Liquor Co. v. Northwest Livestock Co.*, 18 Wash. 71, 50 Pac. 569; *Thomas v. Mitchell*, 27 Wis. 414; 1 Spelling on Appellate Practice, p. 592, sec. 330.) The exception should specify wherein the findings are erroneous. (8 Ency. of Pl. & Pr. 274.) The court is powerless to inquire into the matters set up in the cross-complaint, because McAulay and Keane are not made parties, and were not before the court. Where a creditor's bill assails a deed either for the purpose of having it rectified or vacated, the parties to the deed are necessary parties to the suit, and without such parties no valid decree can be passed. (Bigelow on Fraud, 458; *Ward v. Hollins*, 14 Md. 158; *Gaylords v. Kelshaw*, 1 Wall. (U. S.) 81, 68 L. ed. 612; *Smith v. Shaffer*, 29 Neb. 656, 45 N. W. 936.) The reason for the rule is well stated in the cases of *Spear v. Campbell*, 5 Ill. (4 Scam.) 424; *Williams v. Friedman*, 4 Idaho, 209, 95 Am. St. Rep. 59, 38 Pac. 937. The new matter which it is proper for the defendant to introduce into a pending litigation, by means of a cross-bill, is such, and such only, as it is necessary for the court to have before it in deciding the questions raised in the original suit to enable the court to do full and complete justice to all the parties before it, in respect to the cause of action on which the complainant rests his right to aid or relief. If the defendant, in bringing his cross-bill, attempts to go beyond this, and to introduce new and distinct matter not essential to the proper determination of the matter put in litigation by the original bill,

although he may show a perfect case against either the complainant or one or more of his codefendants, his pleading will not be a cross-bill, but an original bill, and no decree can be rendered on such matter. (5 Ency. of Pl. & Pr. 64; *Andrews v. Kibbee,* 12 Mich. 94, 83 Am. Dec. 766; *Farmers' Bank etc. v. Bronsen,* 14 Mich. 361; *Krueger v. Ferry,* 41 N. J. Eq. 438, 5 Atl. 452; *Griffith v. Merritt,* 19 N. Y. 529; *Chicago etc. Ry. Co. v. Bank,* 134 U. S. 276, 10 Sup. Ct. Rep. 550, 33 L. ed. 900; *O'Neill v. Perryman,* 102 Ala. 522, 14 South. 898; *McMullen v. Ritchie,* 57 Fed. 104; *Ayres v. Carver,* 17 How. (U. S.) 591, 15 L. ed. 179; *Rubber Co. v. Goodyear,* 9 Wall. (U. S.) 809, 19 L. ed. 587.) All parties to a conveyance are entitled to a day in court, and to a full and fair opportunity to sustain the validity of such a transaction. (*Kennedy v. Kennedy,* 66 Ill. 190; *Weaver v. Alter,* 3 Woods (U. S.), 152, Fed. Cas., No. 17,308.) "Where the witnesses appear and testify in a court of equity and there is a substantial conflict in the evidence, the appellate court will not disturb the findings and judgment of the trial court." (*Morrow v. Matthews, ante,* p. 423, 79 Pac. 196-200; *Kendrick State Bank v. Northern Pac. Ry. Co., ante,* p. 483, 79 Pac. 457; *Spencer v. Morgan, ante,* p. 542, 79 Pac. 459.) Section 3022 of the Civil Code provides: "In all cases arising under the provisions of this title except as otherwise provided in the last section, the question of fraudulent intent is one of fact and not of law; nor can any transfer or any change be adjudged fraudulent solely on the ground that it was not made for a valuable consideration." (*Windhaus v. Bootz,* 92 Cal. 617, 28 Pac. 557; *Bull v. Bray,* 89 Cal. 286, 26 Pac. 873, 13 L. R. A. 576; *Jamison v. King,* 50 Cal. 136; *Miller v. Stewart,* 24 Cal. 504; *Threlkel v. Scott,* 89 Cal. 351, 26 Pac. 879.) Fraud will not be presumed, and if relied upon must be demonstrated by clear and convincing evidence. (*Lalone v. United States,* 164 U. S. 255, 17 Sup. Ct. Rep. 74, 41 L. ed. 425; *Wood v. Davis,* 108 Fed. 130; *Holton v. Davis,* 108 Fed. 138-151, 47 C. C. A. 246; Bigelow on Fraud, 489.) In view of these disclosures it is difficult to see how Kerns, as receiver, can complain of these various transactions. Where a creditor participates in or assents to a conveyance of which he complains, he cannot be

heard to assert that the transfer was fraudulent as to him. (*White v. Banks,* 21 Ala. 706, 56 Am. Dec. 283; *Smith v. Wells Mfg. Co.,* 148 Ind. 333, 46 N. E. 1000; *Perisho v. Perisho,* 71 Ill. App. 222; *Zuver v. Clark,* 104 Pa. St. 222; *Simon v. Levy,* 36 Fla. 438, 18 South. 777.)    It can hardly be claimed by Kerns that there ·was any fraud in Keane's purchase of Mc-Aulay's interest after he had first obtained an option for the release of the judgment. If there was no fraudulent intent at the time of its inception, it will not be made so by the subsequent conduct of the parties.    (19 Am. & Eng. Ency. of Law, 269; *Page v. Kendrick,* 10 Mich. 300; *Benson v. Maxwell* (Pa.), 14 Atl. 161; *Sommerville v. Horton,* 4 Yerg. 541, 26 Am. Dec. 242.)

AILSHIE, J.—This action was commenced in the district court to enjoin the defendant sheriff from selling at execution sale a thirteen-sixteenths interest in the California lode claim. In the year 1893, the Coeur d'Alene Bank became insolvent, and at the instance of Van B. DeLashmutt and George B. McAulay, a receiver was appointed to take charge of the property and effects of the insolvent bank.    At the time the bank went into the hands of the receiver, McAulay and DeLashmutt were indebted to the institution in the sum of $46,523.67 on overdrafts. This indebtedness from McAulay and DeLashmutt was never paid, and in the ·meanwhile both debtors left the state.    In 1900, the receiver commenced an action and attached a thirteen-sixteenths interest in the California lode claim, which was then owned by McAulay.    Service of summons was had by publication, and on March 12, 1901, a judgment was entered for something over $51,000.    On the twenty-fourth day of June, 1901, the receiver procured an order from the district judge authorizing him to enter into a contract for the release of his judgment lien against the California lode claim for the sum of $6,000, and such other conditions and terms as to assessment work, and the care and protection of the property as the receiver might see fit to impose, and in pursuance of such order, and on the same day, the receiver entered into an agreement with J. P. Keane whereby Keane obtained an option to purchase the

judgment lien for the sum of $6,000 within six months and cause the annual assessment work to be done prior to the 1st of September following, and also to proceed with due diligence to secure a patent for the claim. Thereafter, and on the fifth day of July following, Keane secured a deed from McAulay to all of McAulay's interest in the California lode claim. This deed recites the consideration as being: "The sum of one dollar and other good and valuable consideration, gold coin of the United States." On the 26th of September following, Keane proceeded in the name of the defendants, McAulay and DeLashmutt, and appearing specially in the district court, moved to dissolve the attachment and vacate the judgment previously entered in the case of the receiver against McAulay and De-Lashmutt on the ground that the affidavit for attachment was defective and that the attachment was invalid and void, and that the service having been made by publication, no personal judgment could be entered against the defendants. That motion was sustained by the trial court and the receiver prosecuted an appeal, and the judgment of the lower court was affirmed in *Kerns v. McAulay,* 8 Idaho, 558, 69 Pac. 539. The receiver thereafter commenced a new action against McAulay and De-Lashmutt in the district court for Shoshone county, and secured a writ of attachment and caused the same to be levied upon the thirteen-sixteenths interest in the California lode claim, standing on the records in the name of Joseph P. Keane. Such proceedings were thereafter had that on the first day of June, 1903, a judgment was entered in favor of the receiver and against the defendants for the sum of $58,950.76. On this judgment execution was issued and placed in the hands of the sheriff, directing him to sell the attached property, and he thereupon proceeded and gave notice that on the twenty-ninth day of June, 1903, he would sell the thirteen-sixteenths interest of the California lode claim, standing on the records in the name of Keane, to satisfy such judgment. On the twenty-fifth day of June, and four days prior to the date on which the sale was to be made, Keane executed a deed for such property to the California Consolidated Mining Company, a corporation, for a consideration stated in the deed to be two hundred and sixty-six

thousand six hundred and sixty-six and two-third shares of the capital stock of the corporation. The deed was acknowledged before Albert H. Featherstone, Keane's attorney, and one of the directors of the California Consolidated Mining Company. The deed was recorded on June 26th, and on the same date this action was commenced against the sheriff to restrain and enjoin the execution sale. On order of the court the receiver was made a party defendant, and he answered setting up the history of the transaction and alleging that the transfers from McAulay to Keane and from Keane to the Consolidated Mining Company were fraudulent transfers made for the purpose of hindering and delaying McAulay's creditors, and especially the receiver of the Coeur d'Alene Bank. The case went to trial before the court, and he found for the plaintiff and entered his judgment perpetually enjoining and restraining the sale of the property on execution, from which judgment the defendants appealed within sixty days and bring the case here on a statement and bill of exceptions.

The contention of the appellants is that these several transfers and transactions between McAulay, Keane and the Consolidated Mining Company were fraudulent and void as to McAulay's creditors.

There is practically no conflict in the evidence in this case. The real controversy is as to what conclusion should be drawn from the facts and circumstances shown in the case. McAulay was largely indebted—$58,000—to the receiver of the Coeur d'Alene Bank, and was not meeting these obligations; was trying to purchase through his apparent agent, Keane, obligations held against him at from twenty to forty per cent of the face value thereof; had no tangible property within the state of Idaho, except his interest in the California lode claim; left the state and avoided the service of process, and accordingly prevented the entry of a personal judgment against him in the state of Idaho; allowed the attachment proceeding against the California lode claim to go by default and a judgment *in rem* to be entered for exceeding $58,000, and took no steps to pay the same, but allowed execution to be issued thereon. These things were all personally known to Keane, who in the

meanwhile secures a contract whereby he acquires the right to purchase the judgment lien for the sum of $6,000, and then turns around and secures a deed from McAulay to the same property, reciting a consideration of $1 "and other good and valuable consideration," and in the face of this state of facts claims that he is an innocent purchaser for a valuable consideration. No attempt was made by the plaintiff to show what the "other good and valuable consideration" was. The recital of the money consideration of $1 explains itself, but the further recital as to "other good and valuable consideration" means nothing, and would be given no weight in the absence of evidence explaining the nature and character of that consideration. It is peculiar that Keane would have on June 24th considered the property worth his paying $6,000 for the release of the receiver's judgment lien, and in ten days thereafter would consider $1 an adequate consideration for the property, if it was not in fact agreed between him and the vendor that either the payment of this judgment should be a part of the purchase price for the property, or else it was their joint purpose to defeat the payment of this claim entirely. Belief in either of these conclusions would be fatal to the plaintiff's right of recovery, but it would be much the more charitable view to say that the payment and discharge of this judgment lien was really intended to be a part of the consideration for the execution of the deed from McAulay to Keane. On this point we have the evidence of Keane himself as follows:

"On about August 22, 1902, I made an agreement with Mr. McAulay that if I ever made anything out of the California, I would take up the outstanding claims and settle them against the bank for twenty cents on the dollar. And since then I have advertised for and purchased several claims under that agreement even though I have not made anything out of the California up to this date. Q. Well, are you doing this as a matter of charity to Mr. McAulay? A. No; Mr. McAulay said when he transferred the California to me that part of the consideration was that I would pay up those claims. I told him that if he so understood it, that if I ever made anything out of the California over and above what it really cost me at that

time, I would so settle them up, and I have published advertisements in the 'Wallace Press' to take them up.   Q. Why don't you file them with the receiver?   A. I can't answer that question as I would like to.   That's the only answer I can give. Q. Then, as a matter of fact, you have been acting for Mc-Aulay?   A. No, sir."

It is contended by the respondent that the evidence fails to show that McAulay was insolvent at the time he made the transfer of this property to Keane.   We think, however, that the presumption to that effect raised by the record is so strong that such a conclusion could not be avoided in the absence of evidence showing to the contrary.   A man is legally insolvent when he becomes unable to pay his debts as they mature in the ordinary course of the business in which he is engaged.   (Cases cited in 16 Am. & Eng. Ency. of Law, 2d ed., p. 636, note 2.) If he is able to pay them, but will not do so, and his creditors cannot discover the property out of which to make the claims, the creditors and the courts have a right to proceed against him under the rules of equity applicable to insolvents, and he who would refute the presumption thus raised against him should be required to produce the evidence which is easily within his reach.   That he was not paying his debts as they became due is evident, and that he had no property other than the California lode claim in the state of Idaho out of which collections could be made, is conceded.   There is injected into this record some rumor that at about the time of this transaction McAulay was reported to have made a large sum of money out of some mining speculation in British Columbia, but the plaintiff did not attempt to prove any such fact.   It is true that Keane at one place in his testimony said McAulay was solvent, but that is a mere conclusion, and without the facts on which it was based could have but little weight as evidence.   We think, however, that in a case like this, where the transaction has taken place within this state, and the obligations and liabilities have arisen in this jurisdiction, and the creditor is seeking to enforce the obligation under the laws of this jurisdiction, and he establishes the inability of the debtor to respond so far as his property or assets within the state are concerned, that he has

then succeeded in establishing at least a *prima facie* case of in-solvency.    A creditor cannot be compelled to exhaust the reme-dies of foreign jurisdictions and incur the risk of there meeting the pleas of statutes of limitations and other perhaps more-burdensome and exacting remedies before he can be said to have established the fact of his debtor's insolvency.

Under the facts in this case it is clear to our minds that Keane was not an innocent purchaser of this property in good faith, and for a valuable consideration, unless it be that the balance of the consideration to be paid for the property was to be the payment of this judgment, and in that event he has not paid the consideration, and should not be allowed to enjoin its collection.

The plaintiff, the California Consolidated Mining Company, a corporation, is only another name for Keane, so far as this transaction was concerned.    He was the promoter, principal in-corporator, manager and resident director of the company, and notice to him was notice to his *alter ego,* the corporation.    Aside from all this there was no delivery of the deed to the corporation, prior to the commencement of this action.    Keane executed the deed and caused his attorney, who was also a director of the corporation, to have it recorded, but no other officer had any knowledge of the transfer, and no action of the corporation was taken in the matter, either as to the transfer or the com-mencement of this action.    In fact, it appears that the shares of stock recited as the consideration for this deed have never been delivered to Keane, but were held in escrow pending his clearing the title to the California Lode.    With reference to his connection with this company he testifies:

"I was one of the incorporators of the California Consoli-dated Mining Company; I have been acting as manager of the company since its organization; a resident director; at the immediate time I deeded that thirteen-sixteenths interest to the corporation plaintiff, I did not consult with the president of the corporation in regard to that deed.    I made the deed to the corporation voluntarily, and no stock was delivered or is-sued to me at the immediate moment; as soon as the deed was recorded it was forwarded to the president of the corporation;

the deed was forwarded to James Viles, room 809, 150 La Salle St., Chicago, Illinois. I have no knowledge of any action by the board of directors of the company to institute this suit, or authorizing the issuance to me of any stock. If the board had taken any such action I should know. The only officer of the company I consulted was Mr. Featherstone. Mr. Featherstone is my attorney and also a director in the company; the board of directors is composed of five members; Mr. Viles is president, and was at the time the suit was brought. I wrote to Mr. Viles as soon as I had brought the suit. I did not ask of him any authority to bring the suit. The California Consolidated Mining Company has had no other managing officer in this county, except myself since its organization; authority was given me as manager to look after the entire interests of the company. I do not remember positively that there is a record of any authority."

Keane has been the chief actor and moving spirit in all the steps taken by McAulay and the California Consolidated Mining Company, looking to the transfer of this California Lode. He seems to have been, if not in fact the agent, the confidential of McAulay, and Kerns testified that when he would write to McAulay about any of the claims of the insolvent bank against him, that the answers to his letters would come from Keane. This was very strong evidence that a close and confidential relation existed between these two men. With all of these relations established and attended with the foregoing circumstances, and many things which have not been recited herein, considered in connection with the result which would be accomplished by means of these transactions, if a court should hold them reasonable and fair, we cannot avoid the conclusion that the plaintiff has no standing in this case in a court of equity. It is claimed that as a matter of fact no fraudulent intent has been shown in this case, but we think it has clearly been done in contemplation of law.

It is generally impossible to ascertain the *actual* intent that was in the mind of the debtor when he transferred his property, and courts of equity do not undertake to ascertain that intent. It is rather the inference of intent which the law

draws from the acts of the debtor viewed in the light of circumstances and conditions under which he acted, and the result accomplished by those acts. In other words, it is the motive which the law imputes to him irrespective of his actual intent. (*Potter v. McDowell*, 31 Mo. 62; *Belford v. Crane*, 16 N. J. Eq. 265, 84 Am. Dec. 155; *Cole v. Tyler*, 65 N. Y. 73; *Hunters v. Waite*, 3 Gratt. 32; *Patten v. Casey*, 57 Mo. 118; 2 Bigelow on Fraud, 376 et seq.)

A conveyance for a mere nominal consideration as this appears to have been from McAulay to Keane should be subjected to the same rules applicable to voluntary transfers. (*Worthington v. Bullitt*, 6 Md. 198; note to *Hagerman v. Buchanan*, 14 Am. St. Rep. 739.)

Respondent argues that appellants have no standing in court on the allegations of fraudulent transfers as contained in the cross-complaint, for the reason that they did not make the grantors, McAulay and Keane, parties and bring them into the case. There is some apparent conflict among the authorities as to whether a fraudulent grantor is a necessary party to an action by a creditor to set aside such conveyance, but the better reason seems to be in favor of the position that while he may be a *proper* party, he is not a *necessary* party. (*Potter v. Phillips*, 44 Iowa, 353; *Coffey v. Norwood*, 81 Ala. 512, 8 South. 199; *Blanc v. Paymaster Min. Co.*, 95 Cal. 537, 29 Am. St. Rep. 149, 30 Pac. 765.)

In the last case cited a demurrer was interposed on the ground of defect in the parties defendant, in that the grantors were not made parties, and the supreme court held that they were not necessary parties, and that the demurrer was properly overruled. We are satisfied that the point is not well taken in this case. Besides, the plaintiff could have secured an order from the court bringing these parties into the case, if for any reason plaintiff had desired them to join issue in the case, or be bound by the judgment.

The judgment in this case must be reversed, and it is so ordered, and the perpetual injunction is dissolved and the cause is remanded, with directions to the trial court to make findings

and enter judgment in accordance with the views herein expressed.   Costs awarded to appellant.

Stockslager, C. J., and Sullivan, J., concur.

ON REHEARING.

(June 6, 1905.)

SULLIVAN, J.—Counsel for respondent filed a petition for a rehearing in this case.   Their first contention is that the decision deprives the respondent of property without due process of law, and is for that reason in contravention of the fourteenth amendment of the federal constitution; and contend that the decision in holding the conveyance from McAulay to Keane and from Keane to respondent to be fraudulent, and made with the intent to hinder, delay and defraud the creditors of McAulay, and therefore void as to him, without making McAulay and Keane parties, and giving them an opportunity to protect and defend the conveyance to the company, is to deprive respondent of property without due process of law.

If respondent considered that McAulay and Keane were necessary parties for a protection of its title, it was respondent's duty to have them brought in.   Appellant was not seeking to sustain that title, but to defeat it, and respondent has had its day in court, and cannot complain that some other person has not had his day.

In preparing the opinion in this case, that contention was fully considered and Mr. Justice Ailshie there states as follows: "Respondent argues that appellants have no standing in court on the allegations of fraudulent transfers as contained in the cross-complaint, for the reason that they did not make the grantors, McAulay and Keane, parties and bring them into the case. There is some apparent conflict among the authorities as to whether a fraudulent grantor is a necessary party to an action by a creditor to set aside such conveyance, but the better reason seems to be in favor of the position that while he may be a *proper* party, he is not a *necessary* party.   (*Potter v. Phillips;* 44 Iowa, 353; *Coffey v. Norwood,* 81 Ala. 512 [8 South. 199]; *Blanc v. Paymaster Min. Co.,* 95 Cal. 537 [29 Am. St. Rep.

149, 30 Pac. 765]." We think the conclusion there reached is correct, and if respondent had desired to make McAulay and Keane parties in order to protect their rights in said action, the court would have permitted it, but respondent made no application for that purpose, and it was not the duty of the appellants to do so.

It is next contended that the court failed to pass upon the point raised by respondent in its brief to the effect that no proper or sufficient exceptions were taken by appellant to the findings of fact and conclusions of law made by the trial court.

It is conceded by counsel for the respondent that the record shows the court allowed an exception to each and every finding and conclusion made, but they say there is nothing to show any exception or objection thereto by appellants. Immediately following the judge's signature to the findings of fact and conclusions of law, we find the following, to wit: "Exceptions to each and every finding and conclusion allowed defendants." The defendants there are the appellants here. That being true, the exceptions there allowed were on behalf of the appellants, so there is nothing in that contention. And further, under the provisions of section 4427, Revised Statutes, no formal exception is required to the findings of fact and conclusions of law, which finally determine the rights of the parties.

We have examined the other points suggested in the petition for rehearing and are fully satisfied that a rehearing should not be granted. A rehearing is therefore denied.

Stockslager, C. J., and Ailshie, J., concur.