[Civil No. 1646.    Filed May 21, 1919.]

[181 Pac. 177.]

PEABODY CONSOLIDATED COPPER COMPANY, a Corporation, Appellant, v. 'LEOPOLD MAIER and BERNHARD MAIER, Doing Business Under the Firm Name and Style of MAIER BROTHERS, a Copartnership, Appellees.

1. CORPORATIONS—VOID TRANSFER — IMPUTATION OF NOTICE.—Where the principal stock and bond holder sued for money advanced and salary, and by judicial sale acquired all assets of company in excess of property sufficient to satisfy mortgage securing bonds, and thereafter promoted another company, to which he transferred first company's property, such transferee, having taken with notice through its promoter that his acquisition of the property in the first place from the first company was in fraud of the first company's creditors, held the property in trust for such creditors.

2. APPEAL AND ERROR—REVERSAL FOR PREJUDICIAL ERROR.—The supreme court will not disturb a judgment unless it is made to appear clearly from the record that harmful error has been committed.

APPEAL from a judgment of the Superior Court of the county of Pima. Samuel L. Pattee, Judge. Affirmed.

STATEMENT OF FACTS BY THE COURT.

This action was commenced in the superior court of Cochise county, and thereafter transferred for trial to Pima county. The appellees commenced the action against the Bonanza Belt Copper Company, a corporation, to recover an account for goods and merchandise furnished the said Bonanza Belt Copper Company, and against the Peabody Consolidated Copper Company as the present owner of the assets of the Bonanza Belt Copper Company and as a successor to the corporate franchise rights and liabilities of the said Bonanza Belt Copper Company.

The plaintiffs recovered judgment against the Bonanza Belt Copper Company for their account as it stood on the sixth day of April, 1914, and were granted a decree against the mines in the hands of the Peabody Consolidated Copper Company ordering the same sold to satisfy plaintiff's judgment against the Bonanza Belt Copper Company. From the

decree ordering the sale of said mines, the Peabody Company appeals.

Mr. John B. Wright, for Appellant.

Mr. Francis M. Hartman, for Appellees.

CUNNINGHAM, C. J. (After Stating the Facts as Above). The relief demanded by this action was a personal judgment against the Peabody Company as the corporate successor to the Bonanza Belt Copper Company, and also a decree against the mines, the title to which was the assets of the Bonanza Belt Copper Company at the time the plaintiffs' debt was created, and which said mines the appellant acquired by means of transactions which were performed for the purpose and with the intent to hinder, delay and defraud creditors of the Bonanza Company, and especially these plaintiffs. The trial court rendered a personal judgment against the Bonanza Belt Copper Company in favor of the plaintiffs for their claim up to April 6, 1914, and denied recovery for all items of account after that date, on the theory that the plaintiffs were notified on that day by the general manager of the Bonanza Belt Copper Company to close the credit account, and that plaintiffs are bound by that notice. The court further decreed that the mines described, the record title of which is in the appellant, Peabody Consolidated Copper Company, be sold to satisfy plaintiffs' said judgment.

The appellant seriously contends that, as the appellant is guilty of no fraud in fact, it cannot be held liable to pay the debts of the Bonanza Belt Copper Company; and in support of such contention it seriously and persistently urges upon our attention the case of *Luedecke* v. *Des Moines Cabinet Co.,* 140 Iowa, 223, 118 N. W. 456, and particularly and especially requests that we examine the notes to 32 L. R. A. (N. S.) 616, where this Luedecke case is annotated. The language of the case that is pressed upon our attention is as follows:

"In order to render the purchasing company personally liable for the debts of the selling corporation, it must appear that: (a) There be an agreement to assume such debt; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corpora-

tions; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact''—citing cases.

The court concludes by saying:

"None of these things appear in this case, and in our opinion the court was in error in rendering a personal judgment against the purchasing corporation."

These cases have no application to the judgment in this record. The judgment is not a personal judgment against the Peabody Company. The personal judgment is against the Bonanza Belt Copper Company, and pursues in the hands of the Peabody Company the real estate which belonged to the Bonanza Company at the time plaintiffs' debt arose. It is well settled that—

"Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosoever possession it may be transferred, unless it has passed into the hands of a *bona fide* purchaser; and the rule is well settled that stockholders are not entitled to any share of the capital stock, nor to any dividend of the profits, until all of the debts of the corporation are paid." *C., R. I. & P. R. R. Co.* v. *Howard,* 74 U. S. (7 Wall.) 392, 409, 19 L. Ed. 117, 120.

See, also, *C., M. & St. P. R. R. Co.* v. *Third Nat. Bank,* 134, U. S. 276, 33 L. Ed. 900, 904, 10 Sup. Ct. Rep. 550; *Northern Pac. Ry. Co.* v. *Boyd,* 177 Fed. 804, 819, 101 C. C. A. 18.

The trial court expressly relied upon a line of cases correlated with the Boyd case. Our inquiry, therefore, is confined to a state of the facts which authorize the creditor to pursue property of his corporate debtor into the hands of a purchaser with notice of the creditor's rights.

The parties concede that plaintiffs were *bona fide* creditors of the Bonanza Company prior to and at the time the appellant corporation acquired its rights to the mines, the property in question. The circumstances surrounding the several transactions resulting in the record title to these mines coming to a pause in the Peabody Company are sustained by undisputed evidence or admissions.

The Peabody Company's immediate grantor was L. C. Dessar, who, by deed of August 5, 1915, conveyed to the Peabody Company said mines. Dessar organized and caused the Peabody Company to be incorporated on July 10, 1915,

with an authorized capital stock of 300,000 shares of the par value of $5 a share. All of said capital stock was issued and delivered to L. C. Dessar in consideration of said deed and of the bonds secured by a trust deed. Dessar acquired the rights he conveyed by said deed of August 5, 1915, in the following manner: On July 23, 1914, L. C. Dessar was the principal stockholder, the controlling director, and general manager of the Bonanza Belt Copper Company, and claimed an indebtedness due him for money advanced in the sum exceeding $9,000, and a salary as general manager at $500 per month overdue for two years up to July 9, 1914, in the sum of $7,500, and filed suit against the said debtor, demanding judgment for both claims. In due time he recovered judgment in the sum of $18,013.84. Thereafter an execution was issued and levied upon said mines, the mines were noticed for sale and sold to the judgment creditor, L. C. Dessar, for his bid of $500. In due time, July 22, 1915, L. C. Dessar received a sheriff's deed conveying all of the debtor's rights in the mines to such purchaser. The purchaser, who was the principal stockholder, the retiring general manager, and thereupon became the apparent owner of all of the assets of the Bonanza Company, granted to said Bonanza Company a lease of the mines until he sold the mines to the Peabody Company on August 5, 1915, so that the Bonanza Company could continue to operate the mines in its own name for a short time. No one will seriously contend, in the light of these facts, that Dessar was ignorant of the claims of these plaintiffs. The transaction was consummated by the assistance of the courts, of which the plaintiffs are not charged with having any actual knowledge. Dessar's action was one in the nature of an action by a trustee to recover of the beneficiary a personal claim for money advanced to and personal services rendered as agent for the beneficiary, and a satisfaction of said claims in part by converting the entire trust estate into his personal ownership, for the small sum of $500, a sum not greater than the reasonable court costs of the proceeding which resulted in the transfer. By means of said court proceeding, L. C. Dessar acquired all of the assets of the Bonanza Belt Copper Company in excess of the property sufficient to satisfy a mortgage lien held by the Empire Trust Company, as trustee for the bondholders, and L. C. Dessar was the sole bondholder. L. C. Dessar thereby became possessed of all the right, title,

interest and claim of the judgment debtor, the Bonanza Belt Copper Company (paragraph 1373, Rev. Stats. Ariz. 1913), in and to the said mines as of the date of the levy of the execution which resulted in the sale. As an unsecured creditor of the Bonanza Company, Dessar, by such judgment and sale of the Bonanza Company's equity in the mines, caused the Bonanza Company to deliver all of its assets to him. He thereby became a preferred creditor of the Bonanza Company. Dessar was the principal stockholder, general manager and principal creditor, controlling and directing all of the affairs of the Bonanza Belt Copper Company. He was the person most vitally interested in its affairs, and was in the position to be the best informed of its creditors of all its affairs. He is therefore charged with full knowledge of the creditors of the Bonanza Belt Copper Company and of the amount of their debts owing by said Bonanza Company. Dessar had actual notice, as general manager of the said Bonanza Company, of the plaintiff's debt. With full knowledge of these affairs, Dessar proceeded, by said court action, to reduce all of the Bonanza Company's assets to his use, to the exclusion of the rights of the other creditors, including these plaintiffs. These assets consisted of the Bonanza Belt Copper Company's equity of redemption in the mines in excess of value sufficient to satisfy the bonded indebtedness represented by the bonds with interest issued under the authority of the trust deed mentioned herein. Such equity was great or small in proportion to the value of the mines over and above the amount of the bonded debt secured by said lien. The value of such equity was uncertain so long as said lien remained unsatisfied, and such condition existed on the twenty-third day of July, 1915, when Dessar received his sheriff's deed.

The question therefore becomes vital whether the Peabody Consolidated Copper Company became a *bona fide* purchaser of said equity in excess of the lien of the trust deed without notice of plaintiffs' claim against such equity as a creditor of the Bonanza Company? Of course, L. C. Dessar, while he possessed such property, could not be heard to say that he had no notice of the existence of plaintiffs' debts. Dessar is chargeable with full notice of plaintiffs' rights, and the facts show that Dessar caused himself, as a creditor, to be preferred to other creditors to the loss of the other creditors. Is the Peabody Company also, chargeable with notice of plain-

tiffs' rights and the wrongs committed by L. C. Dessar against plaintiffs? If the Peabody Company is chargeable with notice of the means used in the circumstances by which Dessar acquired the said mines to the harm of the plaintiffs, then the transfers, first from the Bonanza Company to Dessar, and, second, from Dessar to the Peabody Company, are void as to these creditor plaintiffs.

At the time the Peabody Company acquired the said mines, Dessar was its promoter, its financial agent, its sole stockholder and controlling director—in fact, its guiding spirit. Is it possible that the Peabody Company could have acquired all of the rights of the Bonanza Belt Copper Company in the equity in the mines through the principal creditor, the general manager, and controlling stockholder of both corporations without at the same time acquiring knowledge of the means used by the mutual agent and stockholder to accomplish the conveyance and transfer and in the passage through him leave behind the other creditors? The answer of the lower court is, "No"; that Dessar's knowledge affecting the title conveyed to the corporation he so represented must be imputed to the corporation he so organized—to the Peabody Consolidated Copper Company. This view of the matter of imputed notice is supported by 1 Thompson on Corporations, section 116, cases cited notes pages 250 and 251, and by natural justice and sound logic.

Consequently the Peabody Company is chargeable with notice to the effect that the Bonanza Company preferred its principal stockholder and general manager as a creditor to its other unsecured creditors, and by means of a judgment permitted him to convert to his own use all of the assets, to the loss of its general creditors. The matter of value of the equity so converted by Dessar is not a question in this case. The intention and purpose with which the conversion was accomplished is a question in the pleadings. The complaint charges (paragraph XIII) the Peabody Company with having acquired title to the mines from Dessar in the manner and by the means above referred to "for the purpose and with the intent to hinder, delay and defraud the creditors of the said Bonanza Belt Copper Company, and especially for the purpose and with the intent of hindering, delaying and defrauding the plaintiffs in the collection of their said debt. . . . " The plaintiffs further allege in the same paragraph of their

complaint that the action of Dessar in causing the properties to be sold under said two judgments "resulted in stripping the said Bonanza Belt Copper Company of all of its property, leaving it without any assets whatever subject to execution." The Peabody Company answered paragraph XIII of the complaint in paragraph V of its answer, wherein it says that it "denies that any of the acts or transfers or things alleged in said paragraph XIII of the complaint were for the purpose and with the intent to hinder, delay and defraud the creditors of the said Bonanza Belt Copper Company, and especially for the purpose and with the intent of hindering and delaying and defrauding the plaintiffs or any other person or corporation in the collection of any debt." The appellant thereby asserts the necessity of the existence of an actual fraudulent purpose and specific intent to defraud in order to avoid a conveyance having the effect of depriving other creditors of means of satisfying their debts; that there must appear to exist a personal intent, a consciously fraudulent and dishonest motive, before the conveyance became void as to creditors. But such is not the meaning ordinarily given to such results of conveyances. See *Gibson* v. *Love,* 4 Fla. 217; *California Cons. Mining Co.* v. *Manley,* 10 Idaho, 786, 81 Pac. 50; *Nelson* v. *Leiter,* 190 Ill. 414, 83 Am. St. Rep. 142, 60 N. E. 851.

The plaintiffs, as unsecured creditors of the Bonanza Belt Copper Company, had an equitable right to subject the said Bonanza Company's equity in the mines to a satisfaction of their debts in common with Dessar and other creditors. Of course, the rights of creditors are subordinate to the mortgage lien, as the equity depends upon that lien. The fact that Dessar converted all of the said equity to his use and benefit while standing in a confidential relation to the debtor and thereby being charged with a duty to cause said debtor to deal justly and honestly with all of its unsecured creditors makes him and the debtor whom he represents equally cognizant of the wrong resulting to other creditors less favorably situated, and without any personal, dishonest motive. The results amount to hindering, delaying and depriving the plaintiffs of a valuable right by acts purposely and intentionally done, hence, in law, defrauding the plaintiffs purposely and intentionally. The law imputes the fraud from the acts, conveyances and transfers when they result in a wrong to another, in violation of a duty owing. The grantee receives and holds

the title acquired in such circumstances in trust, subject to the claims of the persons wronged, provided the grantee is chargeable with notice of such wrong as a fact.

The lower court necessarily found, as a fact, that the Peabody Consolidated Copper Company did have notice of these plaintiffs' claims against the said equitable title, and for that reason it was not a *bona fide* purchaser for value, but held the property subject to plaintiffs' rights. This court will not disturb a judgment unless it is made to appear clearly from the record that harmful error has been committed. Upon this record and the whole case, justice seems to have been done the appellant. The judgment seems to have been particularly just and favorable to the appellant.

There being no reversible error on the record, the judgment is affirmed.

ROSS and BAKER, JJ., concur.