(June 18, 1907.)

## OLYMPIA MINING COMPANY, Respondent, v. A. G. KERNS et al., Appellants.

[91 Pac. 92.]

REHEARING—QUESTIONS THAT MAY BE CONSIDERED ON—CONTRACT—CONSTRUCTION OF—MINING CLAIMS—ORGANIZATION OF CORPORATION—SPECIFIC PERFORMANCE OF CONTRACT.

1. Where a rehearing is granted generally, the case stands as though no hearing had been had, and all points and questions that might have been presented on the original hearing may be presented on the rehearing.

2. Where an action is brought for the specific performance of a contract, in order to recover the plaintiff must show that he has performed all of the provisions of the contract to be performed by him, or that he is able, ready and willing to perform them.

3. Where the judgment and decree does not require the performance of conditions precedent in a contract before declaring the specific performance of the contract, the judgment will be set aside.

4. *Held,* under the provisions of the contract sued on, the appellant Kerns was entitled to receive from the corporation stipulated to be organized one-tenth of the capital stock fully paid up, and nonassessable until after all the other nine-tenths of the capital stock of the corporation had paid ten cents per share to said corporation for the development of the mining claims involved in this case.

5. In this case all of the material issues presented by the pleadings should have been determined by the findings of fact and judgment.

6. Under the provisions of said contract, K. and C.; the parties thereto, both being residents of this state at the time the contract was entered into, were to form a corporation, and as it appears from the record, C. organized the plaintiff corporation under the laws of the state of Washington without the consent of K. *Held,* that the organization of the plaintiff corporation was not a compliance with the terms of said contract, and that K. had a right, under the terms of said contract, to insist on the organization of such corporation under the laws of the state of Idaho.

(Syllabus by the court.)

APPEAL from the District Court of First Judicial District for Shoshone County. Hon. Ralph T. Morgan, Judge.

An action to enforce specific performance of a contract. Judgment for the plaintiff. *Reversed.*

J. H. Forney, for Appellant Kerns.

The record is entirely silent, and not a fact can be shown indicating that Mr. Kerns was at any time consulted in the matter of the formation of this corporation. It was organized apparently in the city of Spokane, chiefly by Spokane people, and without taking into consideration the time given, or the money spent by, and the efforts made by Mr. Kerns to keep this property. These parties go into another state against

his express wishes, and without his consent form a corporation of which they are careful to keep control, and they waited over a year from the time of the incorporation in the state of Washington before giving publicity to the corporation in the state of Idaho. Mr. Kerns was not even made a director of the corporation.

It appears from the testimony, and without contradiction, that neither Cunningham nor the plaintiff spent a dollar on the property from the time he took his men off in February, 1903, to the time of the commencement of this action.

The test of contracts is that of mutuality. This was a unilateral contract. (*Brashier v. Gratz*, 6 Wheat. 528, 6 L. ed. 322; *United States v. Noe*, 23 How. (U. S.) 312, 16 L. ed. 462; *Hill v. Barclay*, 18 Ves. Jr. 59, cited in 43 L. R. A. 202.)

The doctrine of specific performance cannot be a sword to one and a shield to another. (*Clark v. American Developing & Min. Co.*, 28 Mont. 468, 72 Pac. 978; *Boldt v. Early*, 33 Ind. App. 434, 104 Am. St. Rep. 255, 70 N. E. 271.)

Courts of equity will not lend their aid to enforce specifically the agreement, regardless of the limitation of time. (2 Story's Equity Jurisprudence, sec. 776; *Coleman v. Applegarth*, 68 Md. 21, 6 Am. St. Rep. 417; *Maughlin v. Perry*, 35 Md. 352.)

Time was of the essence of this contract, even though not expressly stated therein. This fact alone gave the defendant Kerns a right to claim forfeiture. (*Carter v. Phillips*, 144 Mass. 100, 10 N. E. 500; *Fink v. Thomas*, 20 Or. 265, 25 Pac. 717, 12 L. R. A. 239; *Roberts v. Yaw*, 62 Kan. 43, 61 Pac. 409.)

The Idaho supreme court has held the same doctrine particularly applicable to purchase and sale of mining property. (*Durrant v. Comegys*, 2 Idaho, 935, 28 Pac. 425; *Settle v. Winters*, 2 Idaho, 215, 10 Pac. 216. See cases and text-writers there cited.)

Time is of the essence of the contract when it follows by necessary implication from the nature of the property dealt with, or the avowed object of the seller or purchaser. (*Dynan*

*v. McCulloch,* 46 N. J. Eq. 11, 18 Atl. 822; *Taylor v. Long-worth,* 14 Pet. (U. S.) 172, 10 L. ed. 405.)

A decree for specific performance will not be made in favor of a party who has himself been in default. (*Rutland Marble Co. v. Ripley,* 10 Wall. 339, 19 L. ed. 955; Pomeroy's Equity Jurisprudence, sec. 455; *Glock v. Howard & Wilson Colony Co.,* 123 Cal. 1, 69 Am. St. Rep. 17, 55 Pac. 713, 43 L. R. A. 199; *Smith v. Krall,* 9 Idaho, 535, 75 Pac. 263.)

Laches will also prevent a party from enforcing specific performance. (*Galliher v. Cadwell,* 145 U. S. 368, 36 L. ed. 738, 12 Sup. Ct. Rep. 879; *Holgate v. Eaton,* 116 U. S. 33, 29 L. ed. 538, 6 Sup. Ct. Rep. 224; *Taylor v. Longworth, supra;* 10 Am. & Eng. Ency. of Law, 1st ed., 802.)

The decree, it has been held, must bind all the parties, for a decree of specific performance against the defendant is erroneous unless it requires of the plaintiff the performance of his share of the obligations. (20 Ency. of Law, 65; 20 Ency. of Pl. & Pr. 496; *Freeburgh v. Lamoureux* (Wyo.), 85 Pac. 1054.)

"A judgment requiring defendant to convey property to plaintiff, on plaintiff paying to defendant a specified sum, should fix a definite time within which it should be paid." (*Lawrence v. Halverson,* 41 Wash. 534, 83 Pac. 889.)

A. E. Mayhew and E. C. Macdonald, for Respondent.

While acting as a trustee, the defendant Kerns has benefited at the expense of the persons for whom he acted. This is a plain violation of one of the most rigid of equitable principles. (*Sun Dance Gold Min. Co. v. Frost,* 7 Ariz. 289, 64 Pac. 435; *Marshall v. Marshall,* 11 Colo. 505, 53 Pac. 617; *Plass v. Plass,* 122 Cal. 3, 54 Pac. 372-377; *Brundy v. Mayfield,* 15 Mont. 201, 38 Pac. 1067; *Turner v. Sawyer,* 150 U. S. 578, 37 L. ed. 1189, 14 Sup. Ct. Rep. 192-195.)

The general rule is that one who occupies the position of trustee for the benefit of others is incapable of purchasing the trust property, either at public, private or judicial sale, for himself. (*Kitchen v. Bedford,* 13 Wall. 413-417, 20 L. ed. 637; *Appeal of Ricketts* (Pa.), 12 Atl. 60; *Page v. Naglee,*

6 Cal. 241-245; *Hamilton v. Dooly,* 15 Utah, 280, 49 Pac. 769; *Savings & Loan Soc. v. Davidson,* 97 Fed. 696, 38 C. C. A. 365.)

It is too late now for the appellant to urge for the first time that the respondent did not keep its tender good. (*Corcoran v. Sonora Min. etc. Co.,* 8 Idaho, 651-659, 71 Pac. 127.)

John P. Gray, for Appellants Wm. J. Hall and Federal Mining and Smelting Company.

These defendants have been found to be innocent purchasers of the interest for which they hold a deed, and entitled to receive back from the Olympia Mining Company the amount which they have paid out, together with interest thereon, and an appeal has been taken by them for the purpose of protecting their rights in case the decree of the court as to the remaining three-fourths shall be reversed. In case the decree is reversed as to Mr. Kerns, these appellants are entitled to a reversal as to the one-fourth interest, and in case this court holds Mr. Kerns entitled to transfer the property, then appellants are entitled to proceed with their said contract with Mr. Kerns if they wish to complete the purchase thereunder.

### ON REHEARING.

This case was presented·at the October, 1906, term, and decided in favor·of the plaintiff. A rehearing was granted and the former decision reversed, as appears from the following·opinion:

SULLIVAN, J.—This action was commenced by the Olympia Mining Company, a corporation, as plaintiff, against Abner G. Kerns, William J. Hall and the Federal Mining and Smelting Company, a corporation, as defendants, for the purpose of having the plaintiff corporation declared the equitable owner of an undivided three-fourths interest in the Olympia, Portland, Seattle, Alice, Olympia Fraction, Pacific, ·Darling, Diamond Fraction, and an undivided one-fourth interest in the Rose and Lincoln lode mining claims, all situated along

Nine Mile creek, in Placer Center and Lelande mining districts, Shoshone county, and to compel the appellant Kerns to convey to the plaintiff corporation, by good and sufficient deed, an undivided three-fourths interest in and to said mining claims upon the payment to him of $900 with interest, and upon delivery to him of one hundred thousand shares of the capital stock of the plaintiff corporation, paid up to the amount of ten cents per share, and to compel the defendant, the Federal Mining and Smelting Company, to convey to the plaintiff an undivided one-fourth interest to each of said mining claims upon the payment to it of $3,300, with interest thereon.

This action is based upon the following contract or agreement, to wit:

"This agreement made and entered into on this 28th day of May, 1901, by and between Clarence Cunningham, party of the first part, and A. G. Kerns, party of the second part, all of the city of Wallace, county of Shoshone, State of Idaho, witnesseth:

"Whereas the estate of Edward T. Elom, deceased, is the owner of an undivided 5/8ths of the 'Olympia,' 'Seattle,' 'Portland,' 'Olympia Fraction,' and 'Alice'; and an undivided ½ of the 'Darling,' 'Pacific,' 'Rose,' 'Lincoln,' and 'Diamond Fraction' lode mining claims situated in the Placer Center and Lelande Mining Districts, in the county of Shoshone, State of Idaho, lying between the Mammoth and Sixteen to One mines, and south of the Custer mine; and the party of the second part is the owner of the other portion of the said mining claims except the Rose and Lincoln; and,

"Whereas, the party of the second part as such co-owner has petitioned the probate court for an order of sale of the interest of the estate of said deceased in said mining claims, and said petition is to be heard on the 3d day of June, 1901, and it is anticipated that an order for the sale of said property will be made; and,

"Whereas, it is the desire of the parties hereto to purchase the interests of said estate in said properties if the same can be bought for a reasonable sum and upon reasonable terms,

for the purpose of consolidating all of the interests therein and forming a mining corporation to prospect, develop and work said mining claims; and,

"Whereas, the party of the first part is about to leave the state of Idaho, expecting to be absent for a period of two months more or less, and the sale of said premises may occur during said period,

"It is therefore mutually agreed that the party of the second part shall offer to purchase and purchase the interest of the estate of said decedent in said mining claims, if the same can be purchased for the appraised value of said premises, or any less sum; and that the party of the first part will assume and be responsible for the bid and purchase of the party of the second part, and furnish the necessary money to make such purchase at the time when called for by the party of the second part.

"And in consideration of the premises and the services to be so rendered by the party of the second part, it is further mutually agreed that said party of the second part shall be entitled to one-tenth of all of said mining claims, in which he at present has no ownership.

"And it is further mutually agreed that upon the formation of the corporation hereinbefore referred to, which corporation is to be formed as soon as practicable after making said purchase, the party of the second part shall have and be entitled to one-tenth of the stock of said corporation, which stock shall be fully paid up, and non-assessable until after all of the other nine-tenths of the stock have paid ten cents per share to said corporation for the development of said mining claims.

"And as a further consideration the party of the first part hereby agrees to do and perform on each of said mining claims the assessment work required for the year 1901, free of expense to the party of the second part.

"And as a further stipulation the party of the second part agrees to convey to the party of the first part or his assigns, all his right, title and interest in said mining claims for the sum of five thousand dollars to be paid upon completion of

the purchase of the interest of said estate in the premises or sooner.

"Witness our hands and seals this 28th day of May, 1901.

"CLARENCE CUNNINGHAM.

"A. G. KERNS."

It is alleged in the complaint that pursuant to said agreement the defendant Kerns did prosecute a proceeding in the probate court asking for a sale of the interest of Edward T. Elom, deceased, in and to said mining claims, and procured an order from said court on the third day of June, 1901, directing the sale thereof; that thereafter, on the twentieth day of July, said Kerns did purchase at public sale the said interest for the sum of $2,500, of which $500 was paid in cash and the remaining portion, $2,000, was secured by mortgage upon said mining interests due and payable within one year from the date thereof, and that said sale was confirmed thereafter by said court; that thereafter, pursuant to said agreement, Clarence Cunningham, the first party to said agreement, representing himself and his associates, did expend approximately the sum of $25,000 in developing and working the said claims, and they did pay the said Kerns $4,100 on account of the payment of the $5,000 due said Kerns under said agreement, together with one-tenth of all of said mining claims upon the formation of the corporation referred to in said contract, which interest was represented by one hundred thousand shares of the capital stock of plaintiff, which stock was to be fully paid up and nonassessable until after the other nine-tenths of the stock had paid ten cents per share to said corporation for the development of said mining claims, which was the consideration paid for the interests held by Kerns in said mining claims and for services to be rendered by him in securing patents therefor; that the sum of $500, the first payment on the purchase price of said Elom's interest, was paid to said Kerns by the said Cunningham and his associates; that after the confirmation of said sale the administratrix of the estate of the said Elom, deceased, executed and delivered a deed to said mining interests belonging to the estate of the said Elom, to said Kerns, grantee, and that said Kerns made

and executed to said administratrix of said estate a mortgage upon said mining interests to secure the payment of the balance due therefor; that said Kerns took the title to said mining interests in trust for the corporation provided to be formed under the terms of said agreement; that it was understood and agreed between said Kerns and the said Cunningham and his associates that their successor in interest, the corporation to be formed, would furnish the additional money necessary to pay for the said interests, and to pay the said mortgage when it became necessary to pay the same in order to protect said trust estate; that after the purchase of said Elom's interest as aforesaid, and after receiving deed therefor, said Kerns did make, execute and deliver a declaration of trust as follows:

"I, A. G. Kerns of the city of Wallace, county of Shoshone, State of Idaho, do hereby declare and acknowledge that I hold the legal title to the following interests in certain mining claims in trust for the use and benefit of a corporation to be hereafter formed and to be named the Olympia Mining Company, provided Clarence Cunningham of the city of Wallace, in the county of Shoshone, State of Idaho, or the said corporation, shall comply with the provisions of an agreement in writing dated the 28th day of May, 1901, between the said Clarence Cunningham and the said A. G. Kerns.

"The said mining premises being particularly described as follows, to wit: The 'Olympia' lode mining claim; The 'Portland' lode mining claim; The 'Seattle' lode mining claim; The 'Alice' lode mining claim; The 'Olympia Fraction' lode mining claim; The 'Darling' lode mining claim; The 'Pacific' lode mining claim; The 'Diamond Fraction' lode mining claim; One-half of the 'Rose' lode mining claim; One-half of the 'Lincoln' lode mining claim; All situated on the divide between Canyon Creek and the East Fork of Nine Mile Creek, in Placer Center and Lelande Mining District, County of Shoshone, State of Idaho.

"Dated this 17th day of August, 1901.

"Witness my hand and seal.

" (Seal)                              A. G. KERNS."

That thereafter said Kerns in his own name and in fact as trustee for the said contemplated corporation, applied for United States patents for part of said mining claims; that in applying for said patents the said Kerns acted only as trustee for said corporation to be formed under the terms of said agreement and declaration of trust; that he was also acting as agent and attorney for said corporation and the parties organizing the same, and that said parties furnished and paid all the necessary expenses of said application for patent; that said Cunningham and his associates, by and with the full consent of said Kerns, and under the terms of said agreement and declaration of trust, continued to expend money in the development of said mining claims up to and until about the first day of March, 1903, pursuant to said agreement, and the said Cunningham and his associates, acting in pursuance of said agreement and declaration of trust, caused to be organized the plaintiff corporation under the laws of the state of Washington, with a capital of $1,000,000, divided into one million shares of the par value of $1 each; that said Kerns was notified of said organization and acquiesced in and concurred therein, and agreed to the same and made no objection thereto; that thereafter said corporation duly complied with all the laws of the state of Idaho authorizing it to hold mining claims and prosecute business in said state, and that it is now authorized to take and hold and convey real estate, and to do business in said state; that in the year 1903, after the organization of the plaintiff company, on account of large expenditures made by the incorporators in the development of said mining claims and in the payments made to said Kerns by the plaintiff corporation, there was not sufficient money in the treasury of said company to pay said mortgage, and that said Cunningham, who had the management of the affairs of the company, was about to leave for a trip to Alaska, entered into an arrangement for and on behalf of the plaintiff corporation with J. C. Cunningham, vice-president of the company, and F. Cushing Moore and Francis Jenkins, stockholders of the company, that in case payment of said mortgage should be insisted upon, they would

advance the money for the company, to pay the same, and
notified said Kerns of such arrangement, and directed him
that in case payment should be insisted upon, he should call
upon said parties for the money to pay said mortgage, and
that Kerns promised to do so; that on or about the first day
of June, 1903, the administratrix of the estate of the said
Elom, deceased, did commence an action to foreclose said
mortgage; that said Kerns did not notify the plaintiff corpo-
ration nor said Cunningham, nor any of the officers or stock-
holders of the said company, but permitted a decree and judg-
ment of foreclosure to be entered directing the sale of said
mining claims to pay said mortgage; that the date of said
sale was fixed, and the said J. C. Cunningham, vice-president
of the company, for the purpose of protecting the plaintiff
corporation, did advance the money for the plaintiff to bid
in the said property at the sale, and did bid the same in, in
his own name, for the use and benefit of the plaintiff company,
and received the sheriff's certificate of sale, receiving the
same and holding the same in trust for the plaintiff corpo-
ration upon the repayment of the amount of money so paid
by him, all of which was well known to the defendant Kerns;
that thereafter, on the eighteenth day of August, 1904, the
defendant Kerns, in violation of his said trust, and with in-
tent to cheat and defraud the plaintiff, and in violation of
the confidence reposed in him as attorney for the plaintiff,
sold and conveyed to the defendant William J. Hall an un-
divided one-fourth interest in said mining claims, and re-
ceived therefor the sum of $3,300, and that with the said
money he redeemed said property from said sheriff's sale, and
at the same time the said Kerns entered into an agreement
with the defendant Hall to sell and convey to him the remain-
ing interest in said claims; that at the said time said Hall well
knew the said property in equity belonged to the plaintiff,
and well knew that the said defendant Kerns held the legal
title in trust for the plaintiff, and had no legal right to sell
and convey the same; that said Hall, in making said purchase
and contract, was acting as the agent for the defendant, the
Federal Mining and Smelting Company, and said company

furnished the money which was paid to said Kerns as aforesaid; that in making said sale to said Hall and entering into said contract with him the said Kerns violated the trust and confidence reposed in him as trustee of the plaintiff for the sole and simple purpose of defrauding the plaintiff and securing to himself an additional sum of money; that on the twenty-ninth day of May, 1905, the plaintiff corporation demanded of said Kerns the deed conveying all the Olympia, Portland, Seattle, Alice, Olympia Fraction, Darling, Pacific and Diamond Fraction and an undivided one-fourth interest in and to the Rose and Lincoln lode mining claims aforesaid, and tendered to said Kerns, in lawful money of the United States, $900 and a certificate for one thousand shares of the capital stock of the plaintiff corporation, which certificate of stock was paid up to the amount of ten cents per share, for all that was due him under the original contract between said Cunningham and said Kerns, and for his services as attorneys as aforesaid, and that the plaintiff has been at all times, and is now, ready and willing to make said payment, and now brings said money and stock into court to be delivered to him. Then follows prayer for the relief above indicated.

Many of the formal allegations of the complaint were admitted by the answer, and denials of other allegations put in issue many of its material allegations, and for a separate and second defense the defendant Kerns sets up the transaction which occurred between him and Cunningham in detail, and sets up the violation of said contract by Cunningham, in that he failed to make the payment required by said contract and perform the work required to be performed by him upon said claims, and in the formation of the corporation under the laws of the state of Washington instead of under the laws of the state of Idaho; that he was required to spend large sums of money in protecting his own interests in said mining claims during the years 1903, 1904 and 1905, because of the failure of the said Cunningham to keep his part of said agreement; that by reason of such negligence and laches by said Cunningham and his breach of said agreement he im-

paired the title of the defendant Kerns, by making the default in said payments and allowing the premises to be sold to a stranger.

The defendant Hall and the Federal Mining and Smelting Company answered, denying many of the allegations of the complaint, and as an affirmative defense, among other allegations, alleged that they had advanced the defendant Kerns $3,300, which sum was devoted and used in redeeming said mining property from said foreclosure sale and paying the necessary expenses for obtaining patents thereto; that thereafter said Kerns executed a deed to said Hall, but really for the use and benefit of said mining company, being an undivided one-fourth interest in and to said mining claims, and that said Hall held said one-fourth interest for the use and benefit of said mining company, and now holds the same for that purpose; that at the time he executed said deed said Kerns entered into an agreement with said Hall for the purchase of the remaining three-fourths interest in said mining claims; that said contract of purchase was entered into for and on behalf of said mining company; that said contracts were made with said Kerns without any knowledge, information or belief of any right, title or claim on the part of the plaintiff corporation in and to said mining claims or any of them. It is further alleged that the money so advanced by Hall was used to perfect the title to said mining claims, and that in case it is adjudged that the plaintiff is the owner of said premises, that said defendants in equity ought to be reimbursed for said advances with interest thereon, and prays for relief in accordance with the denials and averments of their answer.

Upon the issues thus made the cause was tried to the court without a jury and a great deal of evidence was taken on the trial. Judgment was entered in favor of the plaintiff, from which judgment this appeal was taken. As this action is based upon the contract and declaration of trust hereinbefore set forth, we will first consider the duties assumed by Clarence Cunningham in the execution of said contract. However, before taking that up in detail, we will state some of the facts

that appear from the record.  On May 15, 1900, an option for the purchase of certain mining claims, including at least a part of those mentioned in said contract, was given by the defendant Kerns and the said Elom, now deceased, to Clarence Cunningham for $12,000.  A considerable amount of work was done upon said claims under this option by Cunningham and his associates.  By mutual consent that option was terminated, and in October, 1900, a new contract was entered into.  Under the new contract work continued during several months.  Thereafter, in February, 1901, said Elom died, and after his death the contract sued on herein was entered into.  It appears that this last contract was really a continuation of the two former ones, excepting that it was on more liberal terms.  At the time the first contract was entered into Cunningham had associated with him several persons residing in Spokane and elsewhere, who carried on the work and development of said mining claims as an association doing business under the name of the Olympia Mining Company.  It appears that the work under the first two contracts was practically continuous up until the time of entering into the contract sued on herein.  The defendant Kerns was aware of the fact that Cunningham had associates connected with him in said matter, and, we think, understood that these associates were assisting Cunningham in the payment of the development work done on said mines; that Cunningham and his associates expended something over $21,000 in such development work, and it also appears that Kerns subscribed for ten thousand shares of the stock of said corporation to be thereafter formed, at ten cents per share, and paid the sum of $50 on such shares, leaving a balance of $950 owing to said corporation.

It is contended, *in limine,* by counsel for respondent that, as some of the questions raised on the rehearing were not raised on the original hearing, they cannot now be considered. In reply to this we say that the rehearing was granted generally, and upon no specified points or questions, and therefore any questions that could have been properly raised on the original hearing could be presented on the rehearing.  But,

as we understand the record, the appellant Kerns did raise the questions referred to on the first hearing. As we view this case, we need only pass upon, in this decision, a few of the errors assigned.

Counsel for appellant first contend that the judgment and decree of the lower court does not provide a specified time in which respondent shall pay to appellant the sum of $900, the balance due on the purchase price, and turn over to him one hundred thousand shares of stock, and that it does not provide that respondent shall proceed to work, prospect and develop their property in dispute until the proceeds of the nine hundred thousand shares of stock at ten cents per share shall have been expended. On an examination of the judgment, we find that it provides in part as follows:

"It is further ordered, adjudged and decreed that the defendant Abner G. Kerns, upon delivery to him by the plaintiff of the $900 due under the contract herein, with legal interest, from the time the same became due until May ——, 1905, and upon the delivery to said Kerns of one hundred thousand (100,000) shares of the capital stock of said plaintiff corporation paid up to the amount of 10 cents per share, do forthwith execute and deliver to the plaintiff Olympia Mining Company a good and sufficient deed conveying to said plaintiff an undivided three-fourths interest in and to the said above-described mining claims; that in the event of his failure to execute and deliver such conveyance within thirty days after the entry of this decree, then and in that event Stanley P. Fairweather, Esqr., clerk of this court, and in case of his death or inability to act, then his successor in office is hereby appointed as a commissioner of this court, and as such commissioner is hereby ordered and directed in the name of the defendant to execute and deliver to the plaintiff a deed conveying to it the said three-fourths interest in said mining claims above described, and it is further ordered and adjudged that said deed of said commissioner, when executed and delivered, shall have the same force and effect as though executed by the defendant."

It will be observed that that provision of the judgment or decree is not in accordance with the terms of the contract sued on, which contract is above set out in full in this opinion. Under that provision of the decree, it is provided that Kerns, upon the payment to him, by plaintiff, of $900, and the delivery to him of one hundred thousand shares of the capital stock of said corporation "paid up to the amount of ten cents per share," should forthwith execute and deliver to the plaintiff a good and sufficient deed to an undivided three-fourths interest in the mining claims mentioned, and that in the event of his failure to do so within thirty days after the entry of the decree, then in that event the clerk of the court should make such conveyance. Of course, the decree provides that Kerns shall make such deed upon the payment of said sum of money and the delivery of said shares of stock, but it provides that in case he fails to execute and deliver such deed within thirty days after the entry of this decree, the clerk shall execute the deed, regardless of whether said $900 had been paid and said one hundred thousand shares of stock delivered. For that reason said provisions of the judgment are not in accord with the covenants in said contract. Said judgment provides that the respondent shall deliver to Kerns one hundred thousand shares of the capital stock of said corporation "paid up to the amount of ten cents per share," while the contract provides that said corporation shall deliver to Kerns one-tenth of its capital stock, which, on the basis of a million shares, would be one hundred thousand shares, and provides as follows: "Which stock shall be fully paid up and nonassessable until after all of the other nine-tenths of the stock have paid ten cents per share to said corporation for the development of said mining claims." It will be observed from this provision of the contract that the one hundred thousand shares of stock to be delivered to Kerns was to be fully paid up—not as provided in said decree, "paid up to the amount of ten cents per share," but fully paid up and nonassessable until all of the other nine-tenths of the stock have paid ten cents per share to said corporation for the development of said mining claims. Under the decree,

the one hundred thousand shares of stock to be delivered to Kerns was to be paid up to the amount of ten cents per share, when under the contract it was to be fully paid up and non-assessable until all of the other nine-tenths of the stock had paid ten cents per share in assessments toward the development of said mining claims. If Kerns' stock was to be paid up to the amount of ten cents on the share only, the par value being one dollar, it would leave his stock at the mercy of the "mutatious whims" of the other stockholders in creating indebtedness in the operation and development of said mines, and if they failed to pay any and all indebtedness incurred in the development of said mines up to $90,000, the creditors could recover of Kerns to the extent of ninety cents per share on his stock, as the stock mentioned in said decree is only paid up to the extent of ten cents per share.

We held in the former opinion that under the provisions of said contract, Cunningham had obligated himself to organize the corporation referred to in said contract, and that the organization of the respondent corporation was a sufficient compliance with said provisions. The provision of said contract in that regard is as follows: "Whereas it is the desire of the parties hereto to purchase the interest of said estate in said properties, if the same can be bought for a reasonable sum and upon reasonable terms, for the purpose of consolidating all of the interests therein and forming a mining corporation to prospect, develop and work said mining claims."

Under the provisions of that clause of the contract, it was the desire of the "parties" thereto to form a corporation, and the clear inference therefrom is that the "parties" were to form a corporation and the "parties" were Kerns and Cunningham. Now it appears from the record that Kerns was not consulted in any manner in the formation of the foreign corporation, the Olympia Mining Company; that said corporation was organized under the laws of the state of Washington, and it is earnestly contended by counsel for respondent, Kearns, that the organization of such corporation is not in compliance with said terms of the contract. It appears from the record that Kerns insisted that

the corporation should be organized under the laws of the state of Idaho, and thereby become subject to the jurisdiction of the courts of this state the same as a private individual. Under the provisions of the contract, Kerns had a right to insist on the organization of such corporation under the laws of the state of Idaho. That being the conclusion we have reached after a careful consideration of this case, on the petition and arguments on the rehearing, the decision of that question ends this case, for until a corporation is organized in compliance with the provisions of said contract, neither Cunningham nor the respondent corporation can enforce the provisions of said contract against Kerns. Until a corporation has been organized under the provisions of the contract and has fully complied with the terms and provisions of said contract, the contract cannot be enforced against Kerns. As that is a controlling question in this case, it is not worth while for us to consider the other questions raised.

Under the provisions of this agreement Kerns was entitled to the same voice as Cunningham in the organization of the corporation. It is true that it would take more than two persons to organize a corporation under the laws of this state, or, for that matter, under the laws of Washington; still, had the corporation been organized in compliance with the provisions of this agreement, Kerns would have been entitled to a voice in the selection of the other directors and incorporators, and he would also have been entitled to a voice in determining where the corporation should be organized, whether it should be a domestic or foreign corporation. Again, after the organization of the corporation, under the cumulative method of voting stock at stockholders' meetings (Const., art. 11, sec. 4), Kerns might have been able to name at least one director, and would by this method have been enabled to have a continuing voice in the business and affairs of the corporation. While it is true the contract does not provide in terms that the corporation to be organized should be a domestic corporation, at the same time the appellant had reserved to himself by the terms of the contract as much power and authority and an equal voice with the other party

to the contract. The corporation could not own any property, and had no corporate stock to be represented by stockholders until after it was organized; therefore Kerns would have had as much power and authority in the matter of the organization as Cunningham, even though Cunningham and his associates were to own nine-tenths of the capital stock after the organization. The contract is not one providing for Cunningham and his associates to organize a corporation, but for Cunningham and Kerns to organize a corporation. A corporation organized under the laws of Washington with its principal place of business in Spokane, and its corporate stock books in a foreign jurisdiction, is not the kind of a corporation and the kind of protection that Kerns would likely have sought or availed himself of where he was turning over all his property to the corporation and in turn taking a minority of the stock. The courts of Idaho could not reach the books and officers for the purpose of ordering a specific performance in directing issuance of stock or requiring performance of work or directing, supervising or ordering assessments.

It is next urged that the judgment does not bind or obligate the plaintiff to the defendant Kerns or to any of the defendants to perform its contract with Kerns or to pay the $3,300 and interest to the Federal Mining Company, and that the evidence shows that the defendant Kerns could not maintain an action in Idaho against the plaintiff for the specific performance of the contract. Counsel for respondent declares this proposition to be absurd, for the reason that respondent has an agent in Idaho authorized to accept service of process, and has mining property in this state in which it has invested over $21,000, and that ought to be ample to make such judgment collectible. Counsel thus concedes that for a complete settlement of this matter, it will require further litigation, and that this judgment does not settle all of the rights of the parties in the subject matter of this litigation. It is certainly cold satisfaction to the appellant to be informed that he may proceed and get judgment for the amount of money due him and a decree for the delivery of

the one hundred thousand shares of stock. It is clearly evident that the judgment is far short of what it ought to have been. The respondent should have been compelled to keep its tender of the $900 and one hundred thousand shares of stock good. The contract clearly contemplates the performance of development work on said mining claims to the extent of $90,000, and it is admitted by counsel for respondent in his brief filed the second day of April, 1907, that neither that amount nor any part of it has been expended in the development of said mines, by stating that said corporation had invested over $21,000 in said mining claims, which amount, the record shows, was invested long prior to the commencement of this suit. Under this judgment, the respondent, a foreign corporation, is not required to pay to the appellant Kerns at any certain time the $900 with interest thereon; it is not required to deliver to said Kerns one-tenth of its capital stock, which stock should be fully paid up and nonassessable, until after all of the other ninetenths of the stock has paid ten cents per share to said corporation for the development of said mining claims. The provisions of the contract on which this action is based require those things to be done, and the judgment utterly fails to give Kerns the relief he is entitled to in this suit, if he is compelled to perform his part thereof.

The judgment entered in this case does not conform to the provisions and requirements of the contract entered into between the appellant and Cunningham, and we have concluded that it should be reversed and a new trial granted. We are not in a position to direct a judgment in this case. It has now been more than a year since the case was tried in the lower court, and while it has been suggested, and even shown by affidavit, that no attempt has been made on the part of this respondent to comply with the terms of the decree, still the matter is not presented here in such a manner as to justify us in ordering a judgment thereon. The conduct of the respective parties since the entry of this decree with reference thereto and also touching the subject matter, and under the contracts which were the basis of this action, will be

proper subjects for consideration, and they will necessarily influence the trial court in the further proceedings had herein. The judgment is therefore reversed and the cause remanded, with direction to the trial court to take such further action in the matter in harmony with the views herein expressed as to the law of the case as may seem proper under any additional showing that may be made. Costs awarded in favor of appellant.

Ailshie, C. J., concurs.