(September 8, 1913.)

## OLYMPIA MINING & MILLING CO., a Corporation, Appellant, v. ABNER G. KERNS, Respondent.

[135 Pac. 255.]

TRUST—FORMATION OF CORPORATION—DECLARATION OF TRUST—CONDITIONS PRECEDENT—CONTINGENT TRUST—ADVERSE POSSESSION—STATUTE OF LIMITATIONS—STALENESS OF DEMAND—CESTUI QUE TRUST—TRUSTEE—ACTION AGAINST—REPUDIATION OF TRUST—LACHES.

1.   Where a contract is entered into for the purpose of consolidating all of the interests in certain mining claims and thereafter forming a corporation to prospect, develop and work the same, and a declaration of trust is thereafter made in which it is declared that

K. holds the legal title to certain mining claims for the use and benefit of a corporation to be thereafter formed, to be named the Olympia Mining Company, "provided, Clarence Cunningham, of the City of Wallace in the County of Shoshone, State of Idaho, or the said corporation, shall comply with the provisions of an agreement in writing dated the 28th day of May, 1901, between the said Clarence Cunningham and the said Kerns," and Clarence Cunningham, or the corporation to be formed, failed, neglected and refused to comply with the provisions of said contract, no trust is created.

2.   Said declaration of trust was based on the consideration that Cunningham, or the corporation to be organized, should comply with the provisions of said agreement, and Cunningham having failed to comply with such provisions, *held*, that as said trust depended on conditions precedent which were not fulfilled, a trust could not be enforced.

3.   As Cunningham and his associates agreed to form the plaintiff corporation "as soon as practicable" after the happening of a certain event, and as they failed and refused to organize such corporation within the time stipulated and until about eight years thereafter, *held*, that said contingent trust never ripened into an existing or continuing trust.

4.   Where an agreement contains conditions to be performed by the beneficiary, or some person for him, the beneficiary can enforce the trust only upon the performance of such conditions.

5.   Express as well as implied trusts may be repudiated by adverse possession, and if repudiated, the statute of limitations begins to run from the time the beneficiary has notice of such repudiation.

6.   Where the *cestui que trust* has inexcusably and unreasonably delayed asserting his rights, a court of equity may refuse to enforce a trust on the ground of laches.

7.   The doctrine of laches applies to the enforcement of an express trust only when there has been an open breach or repudiation of the trust or assertion of adverse title by the trustee which is so brought home to the actual or constructive knowledge of the *cestui que trust* as to require him to assert his rights.

8.   The general rule is that length of time is no bar to a trust, clearly established, and that express trusts are not within the statute of limitations, but that rule is subject to the qualification that time begins to run against a trust as soon as it is openly disavowed by the trustee, which disavowal or repudiation is clearly and unequivocally made known to the *cestui que trust*.

9.  *Held,* that where the character of the property is such that it is liable to sudden fluctuations in value, such as mining claims, time is generally of the essence of the contract.

APPEAL from the District Court of the First Judicial District, in and for the County of Shoshone. Hon. W. W. Woods, Judge.

Action to enforce a trust. Demurrer to complaint sustained and judgment of dismissal entered. Judgment *affirmed.*

Featherstone & Fox and Chas. E. Miller, for Appellant.

There is nothing to prevent the owner of property from conveying it to a person in trust to convey to a corporation when organized, and, when the corporation is organized, it may compel the trustee to convey it in accordance with the terms of the trust deed. (Clark & Marshall, Private Corps., sec. 111; *Hecla etc. Min. Co. v. O'Neill,* 65 Hun, 619, 19 N. Y. Supp. 592; *African M. E. Church v. Conover,* 27 N. J. Eq. 157; *Rathbone v. Tioga N. Co.,* 2 Watts & S. (Pa.) 74; *Scadden Flat Gold Min. Co. v. Scadden,* 121 Cal. 33, 53 Pac. 440.)

The cause of action does not accrue and the statute of limitations begin to run until there is some person in being and not under legal disability who can sue or be sued. (*Gent v. Manufacturers' & M. Ins. Co.,* 107 Ill. 652; *Hopper v. Steele,* 18 Ala. 828; *Everett v. Smith,* 62 N. H. 386; *Davis v. Garr,* 6 N. Y. 124, 55 Am. Dec. 387; *Sanford v. Sanford,* 62 N. Y. 555; *Polk v. Allen,* 19 Mo. 467; *Ruff v. Bull* (Md.), 7 Har. & J. 14, 16 Am. Dec. 290; *Commonwealth v. McGowan,* 4 Bibb (Ky.), 62, 7 Am. Dec. 737.)

In an action by the *cestui que trust* against the trustee to enforce an express continuing trust, the defense of the statute of limitations or of laches is never available to the defendant. (1 Perry on Trusts, sec. 82; *Ames v. Howes,* 13 Ida. 756, 93 Pac. 35; *Jones v. Henderson,* 149 Ind. 461, 49 N. E. 443; Pomeroy's Eq. Jur., sec. 1080.)

The statutes of limitations do not bar an action by the *cestui que trust* against the trustee of an express trust. The reason assigned for the rule is that as between the two, the possession of the trustee is deemed to be the possession of the beneficiary. (*Seymour v. Freer*, 8 Wall. (U. S.) 218, 19 L. ed. 306; *White v. Costigan*, 138 Cal. 564, 72 Pac. 178; *Reynolds v. Sumner*, 126 Ill. 58, 9 Am. St. 523, 18 N. E. 334, 1 L. R. A. 327; *Haskell v. Hervey*, 74 Me. 192; *Condit v. Maxwell*, 142 Mo. 266, 44 S. W. 467; *Dyer v. Waters*, 46 N. J. Eq. 484, 19 Atl. 129; *Merritt v. Merritt*, 161 N. Y. 634, 57 N. E. 1117; *Owens v. Williams*, 130 N. C. 165, 41 S. E. 93; *Kimball v. Ives*, 17 Vt. 430; *Stewart v. Conrad*, 100 Va. 128, 40 S. E. 624.)

The plea of laches cannot be invoked in cases brought to enforce a trust against a trustee of an express trust. (*Hensel v. Kegans*, 8 Tex. Civ. App. 586, 28 S. W. 705; *Jackson v. Lynch*, 129 Ill. 72, 22 N. E. 246; *Citizens' Nat. Bk. v. Judy*, 146 Ind. 322, 43 N. E. 259; *McKechnie v. McKechnie*, 3 App. Div. 91, 39 N. Y. Supp. 402.) ·

Franklin Pfirman and J. H. Forney, for Respondent.

A party may not make a mistaken election of remedy, or attempt to enforce a right which by his own default does not constitute a cause of action, and then claim the benefit of the time spent in his mistaken litigation as against the running of the statute of limitations. (*Finney v. Am. Bonding Co.*, 13 Ida. 534, 90 Pac. 859, 91 Pac. 318; *Mills v. Am. Bonding Co.*, 13 Ida. 556, 91 Pac. 381; *Morbeck v. Bradford-Kennedy Co.*, 19 Ida. 83, 113 Pac. 89; *Braun v. Sauerwein*, 10 Wall. (U. S.) 218, 19 L. ed. 895.)

A party cannot defer the running of the statute of limitations by his own negligence. (*Ryan v. Woodin*, 9 Ida. 525, 75 Pac. 261; Wood on Limitation of Actions, sec. 117; *Hobart v. Conn. Turnpike Co.*, 15 Conn. 145; *Lee v. Gause*, 2 Ired. (24 N. C.) 440.)

The trust was not absolute, but upon a condition precedent. It was a contingent trust, depending for its operation upon a future event. (39 Cyc. 33.)

Where the agreement contains a condition to be performed by the beneficiary, he may enforce the trust upon performing the condition, but only in that event.   (39 Cyc. 65.)

An express trust, as well as an implied one, is repudiated by adverse possession and the statute of limitations begins to run from the time of such repudiation. (*Coe v. Sloan,* 16 Ida. 49, 100 Pac. 354; *Nasholds v. McDonell,* 6 Ida. 377, 55 Pac. 894; *Bradley v. Johnson,* 11 Ida. 689, 83 Pac. 927.)

"Against an express and continuing trust time does not run until repudiation or adverse possession by the trustee and knowledge thereof on the part of the *cestui.*" (Perry on Trusts, sec. 863; *Jones v. Henderson,* 149 Ind. 461, 49 N. E. 443; 13 Am. & Eng. Ency. of Law, 688; 5 Pomeroy's Eq. Jur., sec. 28.)

The action of the Washington corporation against respondent was commenced May 29, 1905, on substantially the same grounds as the present suit, except the difference in party plaintiff.   The present suit was commenced March 28, 1912. Hence there is almost seven years since the repudiation of the alleged trust was judicially acknowledged by appellant and its predecessors in interest: (*Speidel v. Henrici,* 120 U. S. 377, 7 Sup. Ct. 610, 30 L. ed. 718; *Raymond v. Flavel,* 27 Or. 219, 40 Pac. 158; *Whitney v. Fox,* 166 U. S. 637, 17 Sup. Ct. 713, 41 L. ed. 1145; *Badger v. Badger,* 2 Wall. 87, 95, 17 L. ed. 836.)

"It has been a recognized doctrine of courts of equity, from the very beginning of their jurisdiction, to withhold relief from those who have delayed for an unreasonable length of time in asserting their claims. (*Elmendorf v. Taylor,* 10 Wheat. 152, 6 L. ed. 289; 2 Story, Eq. Jur., sec. 1520; *Maxwell v. Kennedy,* 8 How. 210, 12 L. ed. 1051; *Patterson v. Hewitt,* 195 U. S. 310, 25 Sup. Ct. 35, 49 L. ed. 214.)   Persons having claims to mining property are bound to the utmost diligence in enforcing them, and there is no class of cases in which the doctrine of laches has been more relentlessly enforced." (*Bradley v. Johnson, supra.*)

Where mines and mining properties are the subject of the contract, time is of the essence, independent of any express

stipulation in the instrument.   (2 Lindley on Mines, 2d ed., sec. 859; 2 Snyder on Mines, secs. 1376, 1377; 27 Cyc. 674; *Settle v. Winters,* 2 Ida. 215   (199), 10 Pac. 216; *Durant v. Comegys,* 3 Ida. 204, 28 Pac. 425.)

"The statement that a corporation is an artificial person, or entity, apart from its members, is merely a description, in figurative language, of a corporation viewed as a collective body.   A corporation is really an association of persons, and no judicial *dictum* or legislative action can alter this fact." (1 Morawetz, Priv. Corp., sec. 227; 1 Thompson, Corp., 2d ed., sec. 10; 2 Cook, Corp., 6th ed., secs. 663, 664; *United States v. Trinidad Coal etc. Co.,* 137 U. S. 160, 11 Sup. Ct. 57, 34 L. ed. 640; *California Con. etc. Min. Co. v. Manley,* 10 Ida. 786, 81 Pac. 50.)

SULLIVAN, J.—This action was brought by the Olympia Mining & Milling Co., the *cestui que trust* or beneficiary, against the defendant as trustee, to enforce an alleged express trust in land.   There was a demurrer to the complaint which was sustained by the court below and judgment of dismissal entered, from which judgment this appeal was taken, the sole question being: Does the complaint state a cause of action and is the cause of action sought to be stated barred by the several statutes of limitations of this state?

This suit was originally commenced on May 29, 1905, by Clarence Cunningham's causing a complaint to be filed in the lower court by the Olympia Mining Company, a Washington corporation, and the decisions rendered in that case by this court on appeal were reported in 13 Ida. 514, 91 Pac. 92, and 15 Ida. 375, 97 Pac. 1031.   On May 28, 1909, Clarence Cunningham caused another action to be commenced in the name of the Olympia Mining & Milling Co., Ltd., the same plaintiff as in this action, against the respondent Kerns, involving the same subject matter.   The respondent appeared in that action by demurrer on substantially the same ground as stated in the demurrer in this action.   On June 7, 1909, after the hearing, the demurrer was sustained by the trial court. Thereafter on June 27, 1909, the plaintiff, the appellant here,

amended its complaint, alleging substantially the same matters and things set up in the complaint in this action. Thereafter, upon the defendant's filing a demurrer to said amended complaint on substantially the same grounds as the demurrer in this action and noticing the same for hearing, the demurrer was sustained and the action was dismissed. In the month of August, 1909, the appellant commenced another suit on the same cause of action in the superior court of Spokane county, state of Washington, and procured service on the defendant while he was temporarily in the jurisdiction of that court. In November, 1909, the case was heard upon its merits and judgment of dismissal entered. Thereafter, on August 11, 1911, on appeal by the plaintiff, the decision of the lower court was affirmed by the supreme court of Washington. (*Olympia Min. etc. Co. v. Kerns,* 64 Wash. 545, 117 Pac. 260.)

In the complaint in this action, after alleging the corporate existence of the plaintiff and of the Federal Mining & Smelting Co., one of the defendants, it is alleged that on May 28, 1901, the defendant entered into an agreement with Cunningham, in words and figures as follows:

"THIS AGREEMENT, made and entered into on the 28th day of May, 1901, by and between Clarence Cunningham, party of the first part, and A. G. Kerns, party of the second part, all of the City of Wallace, County of Shoshone, State of Idaho,

"WHEREAS, the estate of Edwart T. Elom, deceased, is the owner of an undivided 5–8th of 'Olympia,' 'Seattle,' 'Portland,' 'Olympia Fraction' and 'Alice'; and an undivided ½ of the 'Darling,' 'Pacific,' 'Rose,' 'Lincoln,' and 'Diamond Fraction' lode mining claims situated in Placer Center and Leland Mining Districts, in the County of Shoshone, State of Idaho, lying between the Mammoth and Sixteen to One mines, and south of the Custer mine; and the party of the second part is the owner of the other portions of the said mining claims except the Rose and Lincoln; and

"WHEREAS, the party of the second part as such owner has petitioned the probate court for an order for the sale of the interest of the estate of said deceased in said mining claims,

and said petition is to be heard on the 3rd day of June, 1901, and it is anticipated that an order for the sale of said property will be made; and

"WHEREAS, it is the desire of the parties hereto to purchase the interests of said estate in said properties if the same can be bought for a reasonable sum and upon reasonable terms; for the purpose of consolidating all of the interests therein and forming a mining corporation to prospect, develop and work said mining claims; and

"WHEREAS, the party of the first part is about to leave the State of Idaho, expecting to be absent for a period of two months, more or less, and the sale of said premises may occur during said period;

"It is therefore hereby mutually agreed that the party of the second part shall offer to purchase and purchase the interest of the estate of said decedent in said mining claims, if the same can be purchased for the appraised value of said premises, or any less sum; and that the party of the first part will assume and be responsible for the bid and purchase of the party of the second part, and furnish the necessary money to make such purchase at the time when called for by the party of the second part.

"And in consideration of the premises and the services to be so rendered by the party of the second part, it is further mutually agreed that said party of the second part shall be entitled to one-tenth of all of said mining claims, in which he at present has no ownership.

"And it is further mutually agreed that upon the formation of the corporation hereinbefore referred to, which corporation is to be formed as soon as practicable after making said purchase, the party of the second part shall have and be entitled to one-tenth of the stock of said corporation, which stock shall be fully paid up, and nonassessable until after all of the other nine-tenths of the stock have paid ten cents per share to said corporation for the development of said mining claims.

"And as a further consideration the party of the second part hereby agrees to do and perform on each of said mining

claims the assessment work required for the year 1901, free of expense to the party of the second part.

"And as a further stipulation the party of the second part agrees to convey to the party of the first part, or his assigns, all his rights, title and interest in said mining claims for the sum of five thousand dollars to be paid upon completion of the purchase of the interest of said estate in the premises or sooner.

"Witness our hands and seals this 28th day of May, 1901.

"CLARENCE CUNNINGHAM.

"A. G. KERNS."

It is then alleged that in pursuance of said agreement, the defendant procured the necessary probate action in the said Elom estate and purchased the said interest of that estate on the 20th of June, 1901, on a bid of $2,500, upon which he paid the sum of $500 in cash and executed his promissory note in the sum of $2,000 due in one year or as soon as said mining claims could be entered for patent, and executed a mortgage on said interest to secure said deferred payment; that said sale was duly confirmed by the probate court; that pursuant to said agreement said Cunningham entered into possession of said mining claims and procured a large number of persons to associate themselves together with him for the purpose of expending money in the development thereof and for organization and incorporation of a company for the purpose of acquiring the title thereto and working said claims; that representing himself and his associates, he expended approximately the sum of $26,000 in developing and working said mining claims, and paid to the defendant for his personal interest in said claims the sum of $4,100.00; that said Cunningham furnished the defendant the sum of $500 paid by the latter on the purchase price of said Elom's interest; that all of said money was furnished and paid to the defendant by said Cunningham and his associates, the predecessors in interest, organizers and stockholders of the plaintiff corporation, according to the terms of the agreement above set forth, and that the defendant had the title of said Elom estate and held it for the corporation provided to be formed under said

agreement, and that it was understood and agreed by and between the defendant and Cunningham and his associates that their successors in interest, the corporation to be formed, would furnish the additional money necessary to pay the said mortgage when it became necessary to pay the same in order to protect said trust estate; that after receiving the deed from the administratrix for the Elom estate interest, the defendant on August 17, 1901, made, executed and delivered his declaration of trust in words and figures as follows:

## "DECLARATION OF TRUST.

"I, A. G. Kerns, of the the City of Wallace, County of Shoshone, State of Idaho, do hereby declare and acknowledge that I hold the legal title to the following interests in certain mining claims in trust for the use and benefit of a corporation to be hereafter formed and to be named the OLYMPIA MINING COMPANY, provided, Clarence Cunningham, of the City of Wallace, in the County of Shoshone, State of Idaho, or the said corporation, shall comply with the provisions of an agreement in writing dated the 28th day of May, 1901, between the said Clarence Cunningham and the said A. G. Kerns."

That thereafter the defendant in his own name, but in fact as trustee and agent for the corporation, provided to be formed by said agreement, and referred to in said declaration of trust, applied for and procured patents to said lode mining claims and the said Cunningham and his associates, organizers of the plaintiff corporation, furnished and paid all of the expenses of procuring patents for said mining claims; that said Cunningham and his associates continued to expend money in the development of said mining claims up to about March 1, 1903; that on or about March 20, 1903, said Cunningham and his associates caused a corporation to be organized, under the laws of the state of Washington, named "Olympia Mining Company"; that the defendant consented to the organization of the Washington corporation, subscribing for a portion of the capital stock of the same and paid the sum of $50 upon such subscription, and thereafter

the said corporation complied with the laws of the state of Idaho authorizing it to hold mining claims and to do business in the state; that in the year 1903, because of large expenditures already made by said incorporators on behalf of said mining claims, there was not sufficient money in the treasury of the company to pay said mortgage; that the said Cunningham then made an arrangement on behalf of himself and his associates, with J. G. Cunningham, F. Cushing Moore and Francis E. Jenkins, who were among the associates of said Cunningham, that in case payment of said mortgage should be insisted upon, they would advance the money for the payment of the same, of which arrangement the said Cunningham notified the defendant and directed the latter in case payment of said mortgage was insisted upon to call upon said parties for the money to pay the said mortgage and the defendant agreed to comply with said direction; that on or about June 1, 1903, an action was commenced to foreclose said mortgage; that the defendant did not notify said Cunningham or his associates or any of them, of said foreclosure proceedings, but permitted a decree of foreclosure to be entered on July 28, 1903, directing the sale of said mining claims upon such foreclosure; that on or about August 24, 1903, the date fixed for the sale under said decree of foreclosure, the said J. G. Cunningham, having in the meantime learned of the said decree, for the purpose of protecting said Clarence Cunningham and his associates, and according to the agreement heretofore referred to, advanced the money and bid in the said property at said sale, in his own name but for the benefit of the said Clarence Cunningham and his said associates and the corporation to be formed under the terms of said agreement, and received the sheriff's certificate of sale, holding the same in trust, to be assigned and transferred to the said Clarence Cunningham and his associates, upon repayment of the said amount paid by him, all of which was then well known to the defendant; that on August 18, 1904, the defendant, in violation of his said trust and with intent to cheat and defraud the plaintiff, sold and conveyed to one William J. Hall an undivided one-fourth interest in said mining claims for the

sum of $3,300 and redeemed the said property from said sale by paying to the sheriff of said county the amount for which the said property had been sold, with interest and costs, and the defendant at the same time entered into an agreement with the said Hall to convey to him the remaining interests in said mining claims; that the said Olympia Mining Company, its officers and stockholders, and said Clarence Cunningham, had no knowledge whatsoever of said conveyance to, and agreement with, said Hall until during the month of November, 1904; that the first knowledge of such transfer obtained by any of said persons was in said month received by said Clarence Cunningham, and was the first time that any of said persons knew that the defendant had repudiated his said trust and claimed to hold said mining claims as his own and adversely to said persons; that at the time of said sale and conveyance of said one-fourth interest to the said Hall and the agreement to convey the remainder to him, the said Hall well knew that the defendant held the legal title thereof in trust for the plaintiff and the said Hall had full notice of the rights of plaintiff; that at the time of his said purchase and agreement, the said Hall was acting as the agent of the said Federal Mining & Smelting Company, which concern furnished the said sum of $3,300 which was paid to the defendant by the said Hall, well knowing that the defendant held the said property as trustee, without any right in law or equity to sell the same; and that, previous to the commencement of this action the said mining and smelting company reconveyed all its title to said property to defendant, and it, as well as said Hall, now disclaims any interest therein; that on May 20, 1905, the said Olympia Mining Company, incorporated under the laws of the state of Washington, as aforesaid, demanded from defendant a deed transferring the said mining claims to it and tendered the defendant the sum of $900 in gold coin of the United States, the balance due him on the purchase of his personal interest therein and at the same time tendered him Certificate No. 20 for 100,000 shares of the capital stock of the said Olympia Mining Company, which said certificate of stock was issued and certified

to be paid up to the amount of ten cents per share, for all that was due to the defendant under his original contract with Clarence Cunningham and for his services as an attorney rendered in securing the titles and patenting said mining claims, which said demand and tender the defendant refused and rejected; that such refusal to execute and deliver a deed or conveyance was the first time that the defendant, Kerns, directly repudiated his said trust to said Olympia Mining Company or to any of the officers or stockholders or to said Clarence Cunningham, and was the first time that said Kerns, directly to said persons, claimed to own such mining claims adversely to them, and was the first actual notice thereof received directly by them from the defendant, and thereupon the said corporation did, on or about May 29, 1905, commence its action in the district court in and for the county of Shoshone against the said defendant and the said Hall and the said Federal Mining & Smelting Company, to enforce specific performance of said agreement and said declaration of trust; that the said defendant appeared in said action and the same was prosecuted by the Olympia Mining Company, to final judgment in its favor in said district court; that the defendants, and each of them, appealed from said judgment to the supreme court of the state of Idaho, which said appeal was submitted to said court and the said judgment was affirmed; that a rehearing was thereafter granted by the said court and its former decision overruled on January 18, 1907, by which the judgment of the court below was reversed and the said cause was remanded to the latter court for further proceedings, a copy of the opinion of this court being attached to said complaint as an exhibit; that thereafter, to wit, on April 20, 1908, the said cause was dismissed by the said district court; that the plaintiff in that action appealed from said last-mentioned judgment to the supreme court, where the same was affirmed on November 14, 1908 (15 Ida. 371, 97 Pac. 1031), a copy of the opinion being attached to the complaint as an exhibit; that on or about April 5, 1909, pursuant to the terms of said agreement and declaration of trust, the said Clarence Cunningham and his associates, acting under

and in pursuance of said agreement and said declaration of trust, caused to be organized a corporation under the laws of the state of Idaho with a capital stock of one million dollars, divided into 1,000,000 shares of the par value of one dollar each; that the defendant was duly notified of the said organization and previous thereto was invited and requested by said Clarence Cunningham, on behalf of himself and his associates, to participate in such organization and to become a member of the board of directors, and to take part in the adoption of a code of by-laws, and generally to participate in the management of the affairs of the corporation, which the defendant has at all times, without reason, failed, neglected and refused to do, although the said Kerns was designated in the articles of incorporation of plaintiff as one of the original seven directors; that plaintiff is now authorized by law to take, hold and convey real estate, to prospect, develop and work mining claims, to transact the business of mining with all incidental powers thereto within the state of Idaho; that the said corporation was created in strict conformity with the terms and conditions of said agreement and the subsequent agreements between the said Clarence Cunningham, his associates and the said A. G. Kerns; that on January 16, 1909, the defendant, in violation of his trust and with intent to cheat and defraud the plaintiff, sold and conveyed the said mining claims by quitclaim deed to one Jerome L. Day; that at the time of said sale the said Day well knew that said property belonged to plaintiff and that the defendant held the legal title thereto in trust for plaintiff, but the said Day has since reconveyed said property to defendant and now disclaims any interest therein; that in making the said deeds defendant violated his trust and that such acts of the defendant were in defiance of common honesty and in violation of his trust relations, and were for the sole and simple purpose of defrauding the plaintiff; that on the —— day of April, 1909, the plaintiff demanded of the defendant a deed, transferring to it all of said mining claims, and tendered to the defendant the sum of $1,405 in gold coin of the United States, together with interest thereon to the date of tender,

and at the same time tendered to the defendant Certificate
No. 11 for 100,000 shares of the capital stock of the said
Olympia Mining & Milling Co., Ltd., the plaintiff corporation,
which said certificate of stock was duly issued by authority
of said corporation and which said stock was fully paid up
and nonassessable until after all of the other nine-tenths of
the stock of said corporation should have paid ten cents per
share to the said corporation for the development of the min-
ing claims described, which fact was indorsed thereon in the
following words, to wit: "This stock is fully paid up and non-
assessable until after all of the other nine-tenths (9/10) of
the stock of the Olympia Mining & Milling Company, Limited,
shall have paid ten cents per share to said corporation for
the development of its mining claims"; that said tender was
made to defendant for all due him under the original con-
tract between him and Cunningham and for his services as
attorney rendered in securing title and obtaining said mining
claims, and that the plaintiff has been at all times since and
is now ready and willing to make said payment and delivery
to said defendant; that the said mining claims have not
changed in condition or value since the year 1903; that the
plaintiff herein has heretofore offered to pay to the defend-
ant any and all money which he may have paid for, advanced
or disbursed on account of said property or for the benefit
thereof, and hereby again offers to do so; the plaintiff here
again offers to do equity to said defendant as may seem just
and right to the court, and offers to reimburse the defendant
for any and all advancements or disbursements made on any
and every account of or for the benefit of the said mining
claims, and that plaintiff has no adequate remedy at law.

Plaintiff prays judgment that the court decree that the
defendant is the trustee of the plaintiff; that the plaintiff
is the owner in equity and entitled to a deed of said min-
ing claims from the said Kerns, and for such other and further
relief in the premises as to the court may seem just and
equitable.

To this complaint the defendant interposed a demurrer
upon the grounds that no cause of action was stated and that

the action was barred by the following statutes of limitations: Secs. 436, 450, 454 and 460, Rev. Codes.

To the complaint was attached the decision of this court on a former appeal in this case, which decision was rendered on December 13, 1906, but which was not published in the reports, as thereafter a rehearing was granted, and the decision on rehearing is found in 13 Ida., at p. 514, 91 Pac. 92, wherein it was held that under the contract between Cunningham and Kerns an Idaho corporation should have been formed and not a Washington corporation, and that the organization of the Washington corporation was not a compliance with said contract. The case was thereupon remanded to the trial court for further proceedings in harmony with the views expressed in that opinion. When the matter came on for hearing in the trial court, there was no substitution of an Idaho corporation to take the place of the Washington corporation as plaintiff in said action, regardless of the decision of this court holding that said Washington corporation could not maintain this action. The trial court refused to admit any evidence to sustain said cause of action on behalf of the Washington corporation and entered a judgment of dismissal, whereupon an appeal was taken to this court and a decision was rendered on November 14, 1908 (see 15 Ida. 371, 97 Pac. 1031), in which it was again held that said Washington corporation could not maintain this action, and held that the trial court was justified in dismissing said action.

After the second appeal had been determined, Cunningham caused a corporation to be formed under the laws of the state of Idaho. Articles of incorporation were prepared and filed after Kerns had been given notice of the time and place of the organization and of the proposed articles. Thereafter the Idaho corporation, the plaintiff in this action, began suit in Shoshone county, Idaho, against Kerns, raising substantially the same issues as in the former case. Kerns interposed a demurrer to the complaint, which by consent of plaintiff was sustained. An amended complaint was filed, to which a demurrer was interposed, whereupon plaintiff took a voluntary dismissal of the case. The order of dismissal was

entered July 13, 1909, in the district court of Shoshone county. The Idaho corporation having complied with the laws of the state of Washington with reference to foreign corporations therein, on August 23, 1909, began an action in the superior court of Spokane county, state of Washington, which action is substantially the same as the action that had been waged by the Washington corporation in the Idaho courts, in which action said superior court held that it had jurisdiction over the defendant but for certain other reasons dismissed the action. An appeal was taken by the Idaho corporation to the supreme court of the state of Washington and the judgment of the trial court dismissing the action was affirmed. Said decision was rendered by the supreme court of Washington on August 11, 1911. (See *Olympia Min. etc. Co. v. Kerns,* 64 Wash. 545, 117 Pac. 260.)

Thereafter this suit was commenced in the district court of Shoshone county on the 28th of March, 1912, and the demurrer above mentioned to the complaint was sustained by the court on June 8, 1912, and judgment of dismissal entered. From that judgment this appeal was taken.

The order of the court sustaining said demurrer and entering judgment of dismissal is assigned as error. Counsel for appellant presents his assignments of error under three separate heads.

(1) The first contention of appellants is that where a corporation is to be brought into existence by some future act of the incorporators, the franchise remains in abeyance and attaches when such acts are done.

The original agreement between Kerns and Cunningham, above set forth, recites that said agreement is made for the purpose of consolidating all of the interests in said mining claims and forming a mining corporation to prospect, develop and work the same, and in the declaration of trust, above set forth, Kerns declares that he holds the legal title to certain mining claims for the use and benefit of a corporation to be thereafter formed and to be named the Olympia Mining Co.: "provided, Clarence Cunningham of the city of Wallace, in the county of Shoshone, state of Idaho, or the said corpora-

tion, shall comply with the provisions of an agreement in writing dated the 28th day of May, 1901, between the said Clarence Cunningham and the said A. G. Kerns," that being the contract above referred to.

It appears from the record that said contract was executed on May 28, 1901, and the declaration of trust was signed on August 17, 1901. It is recited in said contract that said corporation was to be formed "as soon as practicable" after Kerns should make the purchase of the five-eighths interest owned by the Elom estate in certain of said mining claims, of which claims Kerns owned the remaining three-eighths interest. Kerns proceeded in accordance with said agreement to purchase the Elom estate interest, which he did on June 20, 1901, at a price of $2,500, paying $500 of such purchase price in cash and executing a promissory note for the balance of $2,000 due in one year, and a mortgage securing the payment of the same. The sale was duly confirmed by the probate court of Shoshone county. But Cunningham wholly failed to keep his part of said agreement by not furnishing the money with which to purchase the Elom estate interest, and by failing to organize the corporation provided for in said contract until April 5, 1909,—nearly eight years after Kerns had purchased said Elom estate interest. Under the terms of said contract, said corporation should have been organized within a *reasonable time* after Kerns had purchased the Elom estate interest, and eight years, or thereabouts, was not a "reasonable time," under the facts of this case, in which to organize said corporation and to proceed and take over said mining claims.

The declaration of trust is based on the consideration that Cunningham, or the corporation to be organized, should comply with the provisions of the agreement of the 28th day of May, 1901, and Cunningham having failed to comply with said provisions, the declaration of trust cannot be enforced against Kerns for that reason. Under said contract and declaration of trust, if the plaintiff corporation had been organized within a reasonable time and Cunningham had complied with the provisions of said contract to be performed by him, then

the corporation could have enforced the contract and declaration of trust against Kerns. But taking into consideration all of the facts in this case, the litigation that has been had in regard to the matter, as above set forth, and the persistent refusal of Cunningham and his associates to organize such a corporation as said contract contemplated until about eight years after it should have been organized, the plaintiff corporation is not brought within the rule contended for by the plaintiff, to the effect that where a corporation is to be brought into existence by some future act of the incorporators, the franchise remains in abeyance and attaches when such acts are done. If the provisions of the contract and declaration of trust had been complied with within a reasonable time, the defendant could have been compelled to convey the title to said mining claims to such corporation. But when we take into consideration the character of the property involved here—mining claims—eight years is not a reasonable time within which Cunningham and his associates should have organized the plaintiff corporation. Kerns has been denying the right of Cunningham and his associates to enforce said contract persistently for a number of years, and Cunningham and his associates have as persistently refused to comply with the terms of said contract to be performed by them. Said document entitled a ''Declaration of Trust'' was simply an offer on the part of Kerns, based on certain acts to be thereafter performed, and like any other offer, it could be withdrawn or repudiated if Cunningham failed to keep his part of the contract, and as appears from the allegations of the complaint, Kerns did withdraw or repudiate said declaration of trust in 1904,—about eight years prior to the bringing of this action, and five years prior to the organization of the appellant corporation.

We therefore hold that there is no merit in this contention, for the reason that the alleged trust depended upon conditions precedent which were never performed, and for the further reason that the plaintiff corporation was not organized within the time contemplated by said contract.

(2) The second contention of counsel is that the cause of action does not accrue and the statutes of limitations begin to run until there is some person in being and not under legal disability who can sue or be sued, and counsel contends that as the appellant corporation was not organized until April 5, 1909, the statute of limitations could not commence to run until that time.

In this case the fact must not be overlooked that Cunningham had agreed to form the corporation "as soon as practicable" after making the purchase of the Elom estate interest in said mining claims by Kerns, for which purchase Cunningham was to "assume and be responsible for the bid and purchase of the party of the second part [Kerns], and furnish the necessary money to make such purchase at the time when called for by the party of the second part." The plaintiff corporation endeavors by certain allegations to excuse itself for failure to pay the purchase money for said mining claims and for Cunningham's failure to comply with his part of said contract. If, under the facts of this case, Cunningham and his associates could fail and neglect to pay the money required to be paid by them, and could delay the organization of the corporation contemplated by said contract for eight years after the corporation ought to have been organized, and thus prevent the tolling of the statute of limitations, where shall the line be drawn? Might not such statute be avoided or prevented from running for fifty years, or even longer, in like manner?

It is alleged that Kerns refused to join in the formation of such corporation; but his refusal would not excuse Cunningham and his associates from organizing a corporation within a reasonable time or "as soon as practicable" after the purchase of the Elom estate interest, which occurred on June 20, 1901. This is not a case where the interest in certain mining claims has been conveyed to Kerns as trustee, but is a case where Kerns agreed to do certain things, take over the title and hold it in trust for a corporation to be formed, provided Cunningham furnished the money with which to purchase said interest, which Cunningham failed to do. Had

Kerns simply taken over the title to said mining claims for the sole purpose of holding it, to be conveyed to a corporation thereafter to be formed, that would present a very different question. But Kerns did not agree to hold said title in trust unless Cunningham performed the part agreed to be performed by him under said contract.

Appellant attempts to justify the delay in the formation of the Idaho corporation by showing what was done in the organization of a Washington corporation, the organization of which was held not to be a compliance with said agreement of May 28, 1901. (See *Olympia Min. Co. v. Kerns,* 13 Ida. 514, 91 Pac. 92.) If Cunningham and his associates, against the protest and wishes of respondent, organized a Washington corporation, and thereafter lost some four or five years' time in a vain endeavor to force the defendant to accept that corporation as a compliance with said contract, they certainly must be charged with the consequences of that delay, as this court held on June 18, 1907, that the organization of the Washington corporation was not a compliance with the terms of said contract, and Cunningham and his associates persistently refused, even after that decision, to organize an Idaho corporation in compliance with said contract, until April 5, 1909, nearly two years after said decision was rendered. After the organization of the plaintiff corporation, Cunningham delayed the commencement of this action until March 28, 1912. The entire record in this proceeding, since the said decision of this court, *supra,* shows a deliberate attempt to evade and nullify that decision.

Appellant's whole argument and brief depends upon the assumption that the appellant corporation is a person, and the cause of action only arose when that person came into being by Cunningham and his associates organizing it. But the fact is, it was their duty, under the original contract, to have organized the plaintiff corporation at least as early as 1904.

It is stated in Morawetz on Private Corporations, sec. 227, that "A corporation is really an association of persons, and no judicial *dictum* or legislative action can alter that fact."

And, "In equity the conception of a corporate entity is used merely as a formula for working out the rights and equities of the real parties in interest. . . . . In equity the relationship between the shareholders is recognized whenever this becomes necessary to the attainment of justice; at law this relationship is not recognized at all." (See, also, 1 Thompson on Corporations, 1st ed., sec. 10.) An incorporated company is nothing more or less than an association of individuals acting as a single person by their corporate name.

In *Cal. Consolidated etc. Min. Co. v. Manley,* 10 Ida. 786, 81 Pac. 50, this court, speaking through Mr. Justice Ailshie, said:

"The plaintiff, the California Consolidated Mining Company, a corporation, is only another name for Keane, so far as this transaction was concerned. He was the promoter, principal incorporator, manager and resident director of the company, and notice to him was notice to his *alter ego,* the corporation."

So in the case at bar: Cunningham and his associates were the promoters, principal managers, etc., of the said corporation. In other words, the Olympia Mining Co., the plaintiff, is merely descriptive in figurative language of Clarence Cunningham and his associates, the same parties who failed to make the payments required by the contract of May 28, 1901; the same parties who brought the suit in the name of the Washington corporation on May 29, 1905; the same parties who knew they attempted to secure title to the Elom estate interest in the Elom mining claims by purchase at the foreclosure sale by J. G. Cunningham, instead of advancing the money to pay for said mining claims as they had agreed to do; the same parties who are responsible for continuing this litigation so many years. All this delay was voluntary and, as we view it, inexcusable. It was in a matter peculiarly subject to the rule, well settled, that delay short of the period of the statute of limitations will defeat an action in equity by reason of the doctrine of laches.

While the Olympia Mining Co., Ltd., of Idaho, is named as the plaintiff in this action, it is clear from the record that

Cunningham and his associates are the real parties plaintiff and appellant in this case, and it devolved upon them to comply with the original agreement on which this action is founded, and they cannot escape the consequences of their neglect and failure to comply with the terms of said contract by refusing to organize the corporation contemplated by said contract. The general rule that a cause of action does not accrue and the statute of limitations begin to run until there is some person in being and not under legal disability who can sue or be sued, has no application whatever to this case.

There is no merit in said second contention.

(3) The third contention is that in an action by the *cestui que trust* or beneficiary against the trustee to enforce an express continuing trust, the defense of the statute of limitations or laches is never available to the defendant.

We agree with counsel in that contention, but, as we view it, upon the facts in this case, there was not an express, continuing trust. Kerns did not become a trustee to hold the title to said mining claims, for the reason that Cunningham and his associates failed and neglected to comply with the provisions of said original contract upon the performance of which Kerns had agreed to hold the title to said mining claims in trust. The allegations of the complaint show that the provisions of that contract were not complied with; hence there was no "continuing trust" created. The fatal weakness of this third position of appellant is that the trust was not absolute but upon a condition precedent, which condition had not been complied with. It was a contingent trust, depending for its operation upon a future event, that of full compliance with the original agreement. (39 Cyc. 33.) Where the agreement contains a condition to be performed by the beneficiary, he may enforce the trust upon performing the condition, but only in that event. (39 Cyc. 65.)

This court has held in two cases that an express, as well as an implied, trust is repudiated by adverse possession, and the statute of limitations begins to run from the time the beneficiary has notice of such repudiation. (*Nasholds v. McDonell*, 6 Ida. 377, 55 Pac. 894; *Coe v. Sloan*, 16 Ida. 49, 100

Pac. 354.)   The alleged trust in the case at bar was never subsisting—never came into full existence—for the reason that the conditions precedent were never performed according to the express requirements of said declaration, and was not recognized by Kerns, and was, in fact, repudiated by him in 1904, according to the allegations of the complaint— nearly eight years before this action was commenced to enforce it.

In sec. 200, Wood on Limitations, after stating the general rule, the author says:

"But to this rule there is this qualification, and that is, that when the trustee openly disavows the trust, and clearly and unequivocally sets up a right and interest adverse to the *cestui que trust,* and which is made known to the latter, the statute begins to run in his favor."

The qualification there suggested by the author is supported by numerous authorities cited in the foot-note to that section.   Under proper restrictions, equity as well as law favors the diligent.   In 39 Cyc., p. 601, after stating the general rule to the effect that ordinarily no mere lapse of time will bar the *cestui que trust* of his rights in the subject of the trust, as against the trustee, the author states:

"But even in such cases a court of equity may refuse to enforce a trust on the ground of laches and its inability to do complete justice, where, with actual or constructive knowledge of a breach of trust or assertion of adverse rights, the *cestui que trust* has inexcusably and unreasonably delayed asserting his rights."

Numerous cases are cited by the author sustaining that doctrine, from many different states, the supreme court of the United States and from England.

In 39 Cyc., p. 603, the author states: "The doctrine of laches applies to the enforcement of an express trust only where there has been an open breach or repudiation of the trust, or assertion of adverse title, by the trustee, which is so brought home to the actual or constructive knowledge of the *cestui que trust* as to require him to assert his rights

promptly.'' (See, also, Perry on Trusts, 6th ed., sec. 864; Pomeroy's Equity Jurisprudence, sec. 28.)

The first action to enforce this alleged trust was brought by the Washington corporation on May 29, 1905, on substantially the same grounds as the present suit. That suit was as solemn an acknowledgment of the repudiation of the alleged trust as could be made by Cunningham and his associates. It was alleged in that case that he refused to comply with said trust. Had a corporation been organized in compliance with said agreement and a suit brought in the name of such corporation, at that time, instead of bringing the action in the name of the Washington corporation, such action would not have been barred by the statute of limitations. But that was not done, and the present action was brought nearly seven years after said action had been brought by the Washington corporation, and nearly seven years after the repudiation of the alleged trust was judicially acknowledged by the appellant and its predecessors in interest by the bringing of said action by the Washington corporation. Under the admissions in the complaint, Cunningham and the corporation were in default in 1904, and the respondent Kerns was claiming a forfeiture at that time and was claiming to be the sole owner of said mining claims, and had made a conveyance of a one-fourth interest in the property to one W. J. Hall, and had entered into a written contract for the sale of the remaining three-fourths interest in the property. It is alleged in the complaint that Cunningham first became aware of this claim on the part of Kerns in the year 1904. To be sure, the Idaho corporation was not formed until 1909, when, under the express provisions of the contract, Cunningham and his associates should have organized the corporation ''as soon as practicable'' after Kerns had procured the interest of the Elom estate in and to said mining claims in 1901. The statute of limitations then commenced to run in 1904, when Cunningham first learned of the claim of respondent to hold title adversely to him. After Cunningham had been informed of that fact, he persistently refused to organize the Idaho cor-

poration until 1909, or about five years after he had full knowledge that Kerns had repudiated said alleged trust.

In the case of *Speidel v. Henrici*, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. ed. 718, the court said: "As a general rule, doubtless, length of time is no bar to a trust clearly established, and express trusts are not within the statutes of limitations, because the possession of the trustee is presumed to be the possession of his *cestui que trust*. . . . .

"But this rule is, in accordance with the reason on which it is founded, and, as has been clearly pointed out by Chancellor Kent and Mr. Justice Story, subject to this qualification: that time begins to run against a trust as soon as it is openly disavowed by the trustee, insisting upon an adverse right and interest which is clearly and unequivocally made known to the *cestui que trust;* as when, for instance, such transactions take place between the trustee and the *cestui que trust* as would in case of tenants in common amount to an ouster of one of them by the other."

This is an instructive case, and the court declares that where the bill or complaint shows on its face that the plaintiff by reason of the lapse of time and his own laches is not entitled to relief, the objection may be taken by demurrer. (See, also, *Raymond v. Flavel*, 27 Or. 219, 40 Pac. 158.)

Under the facts as alleged in the complaint, Cunningham and his associates could not stop the running or tolling of the statute by refusing to comply with said original agreement in the organization of the corporation, *cestui que trust* or beneficiary. From the declaration of trust, it clearly appears that one of the conditions precedent to the bringing into existence of such trust was the organization of a holding corporation within a reasonable time after Kerns had purchased the interest of the Elom estate in said mining claims. The authorities both in England and America, where mines and mining property are the subject of contract, hold that time is generally of its essence, independent of any express stipulation in the instrument. (2 Lindley on Mines, 2d ed., sec. 859; 2 Snyder on Mines, secs. 3676, 3677; 27 Cyc. 674.) And that is the rule in this state. As early as 1886, in the

case of *Settle v. Winters,* 2 Ida. 215  (199), 10 Pac. 216, the court held that where the character of the property is such that it is liable to sudden fluctuation of value, time is of the essence of the contract.   This rule is especially applicable to mining property.''  In that case time was not especially stipulated to be of the essence of the contract any more than in the case at bar.   (See, also, *Durant v. Comegys,* 3 Ida. 204, 28 Pac. 425.)

The excuses offered and alleged in the complaint are not sufficient to justify Cunningham and his associates in not complying with said contract.

There is no merit in the third contention of appellant, for the reason that the complaint does not allege an express and continuing trust.   That being true, the defense of the statute of limitations and laches is available to the defendant in this action.

We therefore conclude that the trial court did not err in sustaining said demurrer and entering judgment of dismissal. The judgment is affirmed and costs are awarded to the respondent.

Ailshie, C. J., and Stewart, J., concur.