The **STATE** of Missouri, at the Relation of **PONTIAC REALTY COMPANY**, a Missouri Corporation, Arcadia Realty Company, a Missouri Corporation, Arc Realty Company, a Missouri Corporation, Lydiade Investment Trust, a Missouri Corporation and Gustavus A. Buder, Jr., Relators,

v.

James F. **NANGLE**, Judge, Division No. 3, Circuit Court of the City of St. Louis, Missouri, Respondent.

No. 46693.

Supreme Court of Missouri,

En Banc.

July 14, 1958.

Baron & Freed, David Baron, Charles Bates Baron, St. Louis, for relators.

James J. Milligan, Eugene H. Buder, St. Louis, for respondent.

HYDE, Judge.

Original proceeding in prohibition, in which relators seek to prohibit the trial judge from proceeding against them in the case of Oscar E. Buder v. G. A. Buder, Jr., Executor, et al. on plaintiff's third amended petition, making them defendants, filed in the Circuit Court of the City of St. Louis.

The original petition in the case (in equity for an accounting of the affairs of the partnership of Buder and Buder) was filed on January 2, 1946, by Oscar E. Buder against G. A. Buder and the First National Bank of St. Louis. It was alleged that each partner had a one-half interest and that plaintiff had dissolved the partnership as of January 1, 1946. On November 13, 1953, the Bank filed answer, to the second amended petition in the case, in the nature of interpleader joining relator, Pontiac Realty Company (hereinafter called Pontiac) as a third-party defendant to assert its interest in property held by the Bank as collateral to a note of Pontiac. The Bank was permitted by consent to deliver this collateral into the registry of the Court and the case was dismissed as to it, leaving G. A. Buder the only defendant, except Pontiac Realty as to the status of which the parties do not agree.

G. A. Buder died on April 14, 1954, and, on May 19, G. A. Buder, Jr., his executor, was substituted as defendant. In January 1955, on motion of G. A. Buder, Jr., executor, Acreage Realty Company (a corporation) was made a defendant by consent of plaintiff, "on the ground assets of the Acreage Realty Company are intermingled with the assets of the firm of Buder & Buder." The parties negotiated about making relators defendants but could not agree, and on September 7, 1954, plaintiff had filed a supplemental petition to his second amended petition to bring in relators as additional defendants. This supplemental petition was dismissed without prejudice on September 5, 1956 and on October 15, 1956 plaintiff filed motion for leave to file his third amended petition making relators defendants and this motion was granted on February 15, 1957. Motions to strike and to dismiss the third amended petition were overruled. A referee had been appointed in the case and he had held 108 full days of hearings before relators commenced this proceeding. The supplemental petition, the third amended petition and the motions and orders concerning it are made a part of relators' petition herein. Relators' contention is: "Respond-ent lacks jurisdiction over the claims alleged against Relators in the third amended petition because said petition shows on its face that plaintiff, Oscar E. Buder, has not stated and cannot now amend his petition to state a cause of action against Relators of which the Circuit Court would have jurisdiction for the reason that the claims, alleged therein on their face, are barred by limitations and laches." Relators claim the five-year statute of limitations (Section 516.120 RSMo 1949, V.A.M.S.) applies to the claims of Oscar E. Buder (hereinafter called plaintiff) against them; and that limitations began to run against plaintiff's claims at the time the property in question was taken by claim of ownership with his knowledge, which they say was January 1, 1946, when the partnership was dissolved, at the latest.

■ This case presents a situation somewhat similar to that in State ex rel. Connors v. Shelton, 238 Mo. 281, 142 S.W. 417. Here, as in the Shelton case, "this cause is submitted on the bare pleadings. There is no evidence, no formal demurrer to the returns and no motion for judgment." As in the Shelton case, after our preliminary rule issued, respondent made return "admitting some, but denying specifically certain other, vital allegations of the petition" and "stated facts putting a case to us quite different from that stated in the petition." In the Shelton case (238 Mo. loc. cit. 286, 142 S.W. loc. cit. 418) "relators filed a reply, to the effect that they were without information or knowledge on certain allegation of facts in the returns, but averring that 'said matters are immaterial in this case.'" Here, however, relators' reply specifically denies the new matter but does also say these facts "are irrelevant and immaterial", claiming "this cause must be determined on the basis of the allegations in Oscar E. Buder's third amended petition." Likewise, as in the Shelton case, the reply renewed the prayer for an absolute writ and "neither side asked for a commissioner to take proofs and report." Our ruling in the Shelton case was: "Present issues of fact, absent evidence upon which those issues

**216**

can be determined, and present a reply of the kind indicated, followed by a submission of the case on the pleadings, we may, ex gratia, treat the reply as a demurrer to the returns. In that view of it, we must take all well-pleaded allegations of the returns (not impossible) as true, for the purpose of the case. State ex rel. [Caulfield] v. Broaddus, 234 Mo. [331] loc. cit. 332, 137 S.W. 271. Or, if by way of extreme grace, we take the reply at bottom and meaning as a motion for judgment on the pleadings, the same result would follow, to wit, the well-pleaded averments in the returns would be taken as true, and those averments of the petition specifically denied by the returns would be taken as false. State ex rel. [American Pigment & Chemical Co.] v. Shields [237 Mo. 329], 141 S.W. 585. * * In no other way can the issues of fact raised by the pleadings be laid out of view, and vitality and sense be given to the submission." See, also, State ex rel. Reeves v. Brady, Mo.Sup., 303 S.W.2d 22, 23 and cases cited; Clendaniel v. Conrad, 3 Boyce 549, 26 Del. 549, 83 A. 1034, 1052; Ex parte Easton, 95 U.S. 68, 24 L.Ed. 373. While only plaintiff's third amended petition could be considered on the issue of whether a cause of action has been stated, we certainly must consider the facts stated in plaintiff's return on the issue of whether he can amend his petition to state a cause of action against relators. We will, therefore, consider the facts material to this issue shown by relators' petition and exhibits attached, admitted by the return, and also those shown by the return.

Relators are Missouri corporations; Pontiac was incorporated in 1901, Arcadia Realty Company in 1895, Arc Realty Company in 1899 and Lydiade Investment Trust in 1930. Plaintiff and G. A. Buder, brothers, were partners under the firm name of Buder and Buder, from January 1, 1908 to January 1, 1946, each having a one-half interest in the firm with equal rights in the conduct of the business and the assets acquired. There were no written articles of partnership and no agreement as to how long it should continue; and its business was practicing law and making and managing investments in both real and personal property. Each partner received a monthly salary and all money in excess thereof was to accumulate and be invested. Plaintiff was the active member of the firm handling the preparation and trial of lawsuits and G. A. Buder, the senior in age, operated the firm offices, employed all necessary help, supervised and directed the keeping of books and records, made all investments, had possession and control of the assets of the firm, and acted as attorney and counsellor for many corporations and other clients. Relators' offices are in the Buder Building and in recent years G. A. Buder, Jr., (who had been an employee of Buder and Buder) was the chief officer in charge of them. Plaintiff alleges that G. A. Buder withdrew funds of Buder and Buder (amounting to several millions of dollars) and placed them in the names of relators as straw parties; that these funds were used to buy real or personal property, the title to which is held by relators and which they hold as trustee for the use and benefit of Buder and Buder; that the capital of the corporate relators are investments of Buder and Buder; that all of these corporations were improperly controlled by G. A. Buder and G. A. Buder, Jr.; that the books and records of the corporate relators were kept by Buder and Buder; that the accounts of relators were and are continuous running accounts to the present time, receiving as trustee income belonging to Buder and Buder, but recorded on the books of Buder and Buder only to January 1, 1946; that the debit or credit balances in relators' accounts are a part of either the assets or liabilities of Buder and Buder; that the corporate relators have filed claims in the Probate Court against the Estate of G. A. Buder, deceased, as an attempt to recover and convert to their own use money which belongs to Buder and Buder, when at the same time they hold assets of Buder and Buder with profits and dividends amounting to many millions of dollars; and that "the

assets of Buder and Buder are mingled, commingled, and intermingled with the assets, if any, of (relators)." Plaintiff alleges that there was a net profit of $622,235.04 from the sale of timber lands of the Arcadia Timber Company (Buder and Buder owning ⅔ of the capital stock), in 1919, which G. A. Buder invested in stock of the Burroughs Adding Machine Company and held in names other than Buder and Buder concealed from plaintiff in relators' accounts. Plaintiff also alleges the receipt of a fee of $105,000 by G. A. Buder, in 1909, which he says G. A. Buder placed in his personal bank account, together with 20,000 shares of Inspiration Copper Stock then valued at $5 per share taken by G. A. Buder in his own name, converted by him and used to buy Burroughs stock, which plaintiff claims is held by relators Pontiac, Arcadia Realty and Arc, 5,700 shares each. Plaintiff alleges several other specific transactions during the 1908–1946 period in which he claims G. A. Buder converted fees due to Buder and Buder, with false and fictitious entries on the books; and also the organization of the Arcadia Refining Company, with funds of Buder and Buder, all of the preferred and common stock of which is held by G. A. Buder, Jr. Plaintiff claims to have discovered these transactions in 1954 from audit by his accountant and testimony before the Referee.

Plaintiff contends the facts alleged show that G. A. Buder completely dominated the corporate relators, and acted as if they were completely owned by him, and that the legal entity of these corporations should be disregarded in equity and the acts of these corporations considered as the acts of G. A. Buder. Under this theory, plaintiff says relators hold assets of the partnership as trustees subject to accounting just as he would. Plaintiff relies on the following cases in which corporate entity was disregarded to prevent the bar of limitations, Linn & Lane Timber Co. v. U. S., 236 U.S. 574, 35 S.Ct. 440, 59 L.Ed. 725; Minifie v. Rowley, 187 Cal. 481, 202 P. 673; see, also, Olympia Mining & Milling Co. v.

Kerns, 24 Idaho 481, 135 P. 255; Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562, cited by plaintiff. In the Linn & Lane case, a suit to cancel patents on ground of fraudulent entries, the supposed owner had secretly transferred title to a corporation which was not made a party until after the statutory period of limitations had run. However, on findings that the corporation was a mere tool of defendant Smith, a party to the fraud and the organizer of the corporate defendant, also "that his knowledge was its knowledge * * * and that it was a party to an effort to keep the title concealed," it was held "the difference in legal personality between Smith and the corporation gives the corporation no greater rights than Smith." The Court said (35 S.Ct. loc. cit. 441): "We now are not considering the effect of a fraudulent concealment of a cause of action. We are considering whether a man who knows that his title is bad and will be attacked can call into being a corporation which he owns, in order to save the property, make a deed to it, put the deed into his pocket, leave it unrecorded, and, without the need of trusting even an accomplice, can keep it with perfect security until the statute has run, and then set up that his creature owns the land. We are deciding that if a secret transfer of wrongfully held land is made in this way for the purpose of busying the United States with the wrong person until the title shall be made good by time, service on the man thus put forward is sufficient to avoid the statute and the trick must fail." Plaintiff claims that G. A. Buder transferred and concealed assets of the partnership by using relator corporations in much the same way and for a similar purpose.

In the Minifie case, a corporation owned by the defendant had given its note for his debt so that his last personal transaction with the partnership involved was prior to the limitations period, but the corporation's note was not barred by limitations. (Defendant later became executor of the last surviving partner of the firm.) The Court held (202 P. loc. cit. 676) that,

under the facts alleged, equity could penetrate the fiction of the independent existence of defendant's corporation and consider that the note executed by the corporation was made, executed and delivered by defendant and his liability thereon was not barred by limitations. We discussed the grounds upon which corporate entity could be disregarded in May Department Stores Co. v. Union Electric Light & Power Co., 341 Mo. 299, 324–328, 107 S.W.2d 41, 53–55; and, while the allegations of the third amended petition are not as clear and definite as they might be to show the essentials required for disregarding the corporate entity of relators, we doubt that the petition is fatally defective in this regard. However, the question we have to decide is whether it conclusively appears that plaintiff cannot state a cause of action, against relators, which on this theory would not be barred by limitations. Considering also the additional facts stated in plaintiff's return, our conclusion is that we cannot so hold.

Plaintiff also relies on the following provision of the five-year statute of limitations, Section 516.120(5): "An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." Plaintiff says the facts alleged show concealed fraud of G. A. Buder and that this was not discovered until after the trial of this case began before the referee on February 7, 1953. Relators say that in order to attain the benefits of this savings clause, plaintiff must plead the facts relating to concealment of fraud and the discovery thereof; that if the means of discovery were available he must show the use of all due diligence to discover the alleged fraud; and that the five-year period runs from the time the means of discovery were available, citing Gilliam v. Gohn, Mo.Sup., 303 S.W. 2d 101; Warwick v. De Mayo, 358 Mo. 130, 213 S.W.2d 392; Heisler v. Clymer, 179 Mo.App. 110, 161 S.W. 337; Bent v. Priest, 86 Mo. 475; none of which involve a situation like that presented in this case. Relators say that limitations began to run at the time the property in question was taken by G. A. Buder under claim of ownership with the knowledge of plaintiff and contend that the facts alleged in his petition show that he must have known about the matters claimed to have been discovered since the accounting action was commenced. Plaintiff relies on his claims of false entries, concealment and reliance on his partner, citing Osler v. Joplin Life Ins. Co., Mo. Sup., 164 S.W.2d 295; Foster v. Petree, 347 Mo. 992, 149 S.W.2d 851, 853; Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562; Thompson v. Lyons, 281 Mo. 430, 220 S.W. 942; Monmouth College v. Dockery, 241 Mo. 522, 145 S.W. 785; Pomeroy v. Benton, 57 Mo. 531; Briece v. Bosso, Mo.App., 158 S.W.2d 463. Plaintiff says these cases hold that, when fraud is concealed by a party occupying a fiduciary relation with another, the period of limitations does not begin to run during the time it is concealed and claims to come within this exception.

As to these propositions, relators contend that plaintiff's third amended petition and return show there was no recent discovery of concealed fraud, saying that plaintiff never alleged the books of Buder and Buder were not available to him; that plaintiff is presumed to know what is on the books so there is no excuse for his failure to discover the facts; that plaintiff knew about representing the copper companies in 1909 and knew that fees were received; that plaintiff alleges Buder and Buder kept the books and records of Arcadia Timber Company and all receipts and disbursements of that company were made through the bank account of Buder and Buder to which plaintiff had access; that plaintiff showed by statements in his return that he knew the principal investment of Buder and Buder was in capital stock of the Burroughs Adding Machine Company; that the other claimed recent discoveries were matters shown by the books; and that plaintiff's statement re-

garding such information being obtained from the books directly contradicts his contentions of concealment and secrecy. Relators claim that admissions in plaintiff's pleadings show conclusively "that there was no secrecy, no deception and no fraud"; that plaintiff "had all the facts available to him"; and that with such knowledge there could be no fraud and therefore their corporate identities cannot be disregarded. Relators also say that plaintiff could have brought an action at law against G. A. Buder from the time plaintiff had knowledge that G. A. Buder took the fee in the copper case under a claim of sole ownership and that this applies to other claims alleged concerning G. A. Buder taking partnership property as his own, citing 68 C.J.S. Partnership §§ 117–118, pp. 558–560; Brockman v. Fehrenback, Mo.App., 238 S.W. 1087; Gilliam v. Loeb, 131 Mo.App. 70, 109 S.W. 835; Nicholas v. Hadlock, Mo.App., 180 S.W. 31; Hunter v. Hunter. Mo.Sup., 237 S.W.2d 100. Plaintiff claims all of these matters were involved with other partnership matters and could be settled only in the accounting action between the partners.

Relators rely on the presumption stated in 68 C.J.S. Partnership § 227, p. 720: "It is presumed that each partner knows the entries in the firm books, provided he has access to them. The possession of access to the firm books by a partner has been held to be presumed, * * *." However, it is also therein shown that this is a rebuttable presumption. Plaintiff's return states that he "neither knew nor understood how such records were kept"; that "money was withdrawn by G. A. Buder from the bank account of Buder and Buder and deposited principally in his personal bank account and thereafter the investments were made in Burroughs' stock which at the time or subsequently was transferred to the relators"; and that "the details concerning stock purchased with said funds had to be obtained from the records of the Burroughs Corporation in Detroit", after the accounting action was commenced.

Many matters besides legal business of the firm went through the accounts of Buder and Buder, as shown by our records in Star-Time Publishing Co. v. Buder, Mo. Sup., 245 S.W.2d 59, and In re Buder, 358 Mo. 796, 217 S.W.2d 563, 569, and cases there cited. We think it appears from the record before us that determination of the issues of limitations and laches depend on much of the same evidence which the referee must hear to determine the merits of the case. Our conclusion is that these matters cannot be determined on the pleadings in this case for prohibition. Because of the view we take it is unnecessary to consider other matters discussed in the briefs.

Our preliminary rule is discharged.

All concur.